## OPINION TO THE SENATE.

JANUARY 14, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

OPINION to the SENATE in answer to request for an opinion as to regulation of fisheries in the waters of the state.

January 14, 1958

To the Honorable, the Senate
  of the State of Rhode Island and
    Providence Plantations

We have received from the honorable senate a resolution requesting, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, our written opinion upon the following question of law:

"Is it within the powers of the general assembly under the provisions of section 17 of article I of the constitution of the state of Rhode Island to pass an act prohibiting commercial fishermen from taking striped bass from the waters of the state at any time or for any length of time by means of seining, trapping or otherwise capturing striped bass?"

Section 17 of article I of the constitution of this state reads as follows: "The people shall continue to enjoy and freely exercise all the rights of fishery, and the privileges of the shore, to which they have been heretofore entitled under the charter and usages of this state. But no new right is intended to be granted, nor any existing right impaired, by this declaration."

In the question as submitted we are asked whether, in view of the provisions of sec. 17 of article I of the constitution, the legislature has authority to prohibit "commercial fishermen" from taking striped bass from the waters of the state at particular times through the use of prescribed devices. If the honorable senate by asking the question in this form intended to inquire whether the constitutional provision confers rights to those who resort to fishery for commercial purposes in excess of those granted to the people of the state generally, we would answer that inquiry in the negative.

The constitution gives the benefits of fishery to all the people in equal measure. This court has recognized that the constitutional guarantee of a continuation of free fishery is for the benefit of all the people and gives no peculiar rights to those resorting to it for commercial purposes. In *State* v. *Kofines,* 33 R. I. 211, at page 224, we stated: "As all the inhabitants of the state, men, women and children, citizens and aliens are interested in the franchise, and as all cannot fish for lobsters, and but comparatively few do, it is manifest that if the interests of all are to be conserved the fishing must be carried on for the ultimate benefit of the people of the state and not merely for the profit and

emolument of the fishermen engaged in the business, whose conduct in the premises must be unselfish enough to include the interests of those who cannot personally attend to the matter." See also *State* v. *Cozzens*, 2 R. I. 561.

Neither do we understand that the purpose of the question submitted is to inquire whether the legislature may permit one class of citizens to take these fish while prohibiting entirely the taking thereof by another class of citizens, as for example those who resort to fishery for commercial purposes. Did we so understand the question, we would answer it in the negative, since a statute of such purport would be invalid as discriminatory.

The question as we understand it is essentially an inquiry as to whether legislation which is regulatory of free fishery is by reason of its regulatory character violative of the constitutional provision. We think that this question may be best answered in the language employed by this court in the case of *Payne & Butler* v. *Providence Gas Co.*, 31 R. I. 295, at page 327, which reads as follows:

"Therefore the whole subject of fisheries, floating and shell-fish, and all kinds of shell-fish, whether oysters, clams, quahaugs, mussels, scallops, lobsters, crabs, or fiddlers, or however they may be known and designated and wherever situate within the public domain of the State of Rhode Island, are under the fostering care of the General Assembly. It is for the legislature to make such laws, regulating and governing the subject of lobster-culture, oyster-culture, clam-culture or any other kind of pisciculture, as they may deem expedient. They may regulate the public or private fisheries. *They may even prohibit free fishing for a time and for such times as in their judgment it is for the best interest of the State so to do.* They may withhold from the public use such natural oyster beds, clam beds, scallop beds or other fish beds as they may deem desirable. They may make a close time within which no person may take shell-fish or other fish, and generally they have complete dominion over fisheries and fish as well as all kinds of game. We find no limi-

tation, in the constitution, of the power of the General Assembly to legislate in this regard, and they may delegate the administration of their regulations to such officers or boards as they may see fit." (italics supplied)

We have stated that in our opinion, notwithstanding the provisions of sec. 17, the power of the legislature to regulate fisheries in the waters of this state is plenary, *State* v. *Nelson,* 31 R. I. 264, 270, and is no longer open to question. *Windsor* v. *Coggeshall,* 54 R. I. 38.

Therefore, the question as we thus construe it is answered in the affirmative.

FRANCIS B. CONDON
THOMAS H. ROBERTS
HAROLD A. ANDREWS
THOMAS J. PAOLINO