Gemma M. DUMONT et al.

v.

Ronald T. SPEERS and Economic Development Corporation.

Supreme Judicial Court of Maine.

Aug. 22, 1968.

MARDEN, Justice.

On appeal. Under the provisions of 12 M.R.S.A. § 2201 [1] appellants addressed a petition to the Commissioner of Inland Fisheries & Game (Commissioner), seeking the installation of a fishway in the dam across the Kennebec River at Augusta serving the Bates Manufacturing Company. The Commissioner assigned the matter for hearing on February 10, 1967. It may be concluded that the Commissioner made no immediate decision on the petition, and by pleading entitled "Complaint in Review of the Administrative Action" dated August 21, 1967, appellants sought, in the nature of a Petition for a Writ of Mandamus, to require the Commissioner to (a) record a decision upon the petition heard on February 10, 1967, and (b) to require that the fishway be provided. To this pleading defendant Commissioner filed a Motion to Dismiss upon the ground (1) that the petitioners failed to state a claim upon which relief could be granted, and (2) that the Commissioner's discretion in the premises was absolute and not subject to review by the court.

Meantime it appearing that the dam in question was owned by the Economic Development Corporation and not Bates Manufacturing Company, the complaint was amended on November 8, 1967 in conformity with the fact, in response to which the Economic Development Corporation filed a Motion to Dismiss over date of November 17, 1967 for substantially the same reasons as those advanced by the Commissioner.

---

Jerome G. Daviau, Waterville, for appellants.

Leon V. Walker, Jr., Asst. Atty. Gen., Richard B. Sanborn, Augusta, for appellees.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and WEATHERBEE, JJ.

1. § 2201. "Whenever the commissioner shall deem it expedient, he may require a fishway to be provided, erected, maintained, repaired or altered by the owners or occupants of any dam or other artificial obstruction above tidewater in any inland waters frequented by salmon, landlocked salmon, shad, alewives or other migratory fish.

"The commissioner shall hold a hearing as follows:

"1. Petition by citizens. Whenever he shall be petitioned by 200 citizens of a municipality or municipalities in which such a dam or artificial obstruction either exists or is adjacent to a municipality in which such dam or artificial obstruction exists;

\* \* \* \* \*

"After hearing, the commissioner by written order may require the owners or occupants of said dam \* \* \* to provide, \* \* \* a suitable fishway, \* \* \*.

"Any owner or occupant may, within 14 days after any order of the commissioner, appeal to the Superior Court from any such order. \* \* \*."

Also meantime, according to finding by the presiding Justice, the Deputy Commissioner on behalf of the Commissioner notified counsel for appellants by letter of November 14, 1967, that the decision of the Commissioner was "not to order the construction of the requested fishway."

By letter of November 30, 1967 the Commissioner notified appellant's attorney that "after due consideration, it is the decision of the Commissioner not to order construction of such fishway."

The Superior Court, by order dated January 26, 1968, granted the motions of both defendants for dismissal and petitioners appealed.

The Justice below held, in substance, 1) that if the pleading filed by petitioners be accepted as a petition for Writ of Mandamus, which Writ could require the Commissioner to act upon the evidence presented to him, but not how to act, Rogers v. Brown, et als., 135 Me. 117, 119, 190 A. 632; Young v. Johnson, 161 Me. 64, 70, 207 A.2d 392, the issue became moot when the Commissioner filed his decision. 2) That if the pleading be accepted as an appeal from administrative action under Rule 80B M.R.C.P., it had no standing as such for on its date there was nothing from which to appeal.

Appellants urge:

A. That if the Court treated their pleading as seeking a Writ of Mandamus, its conclusion was in error because (1) under the reference statute the Commissioner, upon petition by the required number of citizens and proof that the inland waters involved were frequented by the fish specified, is required as a matter of law to order the installation of a fishway, or (2) if under the statute the installation of the fishway is not mandatory, but rests within the discretion of the Commissioner, such discretion lodged with the Commissioner violates (a) public policy, and (b) is a wrongful delegation of a legislative function.

B. That a dam without a fishway is a public nuisance.

*Fishway required upon petition?*

█ With relation to appellants' contention A. 1., the statute, on its face, lodges discretion in the Commissioner to require a fishway, but appellants insist that the word "may" in the statute must be read as "shall" upon the principle declared in Low v. Dunham, 61 Me. 566, 569, and Collins v. State, 161 Me. 445, 449, 213 A.2d 835. In the phrasing of the rule as given in those cases not only do we fail to find anything to give the public or third persons a claim *de jure* for the installation of a fishway in this dam, but a long legislative history in the treatment of fishways make it clear that the legislature never intended that this statute be mandatory instead of permissive.

In no "Mill Act," from the original appearing in Chapter 45 of the Revised Statutes of 1821 to the present (38 M.R.S.A. § 651 et seq.), has a fishway been required in the construction of dams authorized by that Act. The first legislative consideration of fishways appears to have been in Chapter 16 of the Public Laws of 1840 wherein the County Commissioners were authorized to require fishways in dams located in streams emptying into rivers in which "Salmon, Shad or Alewives abound."

The Revised Statutes of 1841, Chapter 61 § 10, required the County Commissioners to inspect all such dams, "decide what would be a suitable fishway" and require its construction.

The Revised Statutes of 1857, Chapter 40 § 22, required the County Commissioners to so act "on the written application of three or more responsible persons."

The Public Laws of 1869, Chapter 70 § 4, which also created a Commissioner of Fisheries, required the owner or occupant of dams above tidewater and those in tidal waters of the Kennebec River (as a fishery district under § 9) to provide, keep in repair and open for the passage of fish "a

durable and efficient fishway" of such form, capacity and location as might be determined by the Commissioner. This provision continued until 1913.

Chapter 206 of the Public Laws of 1913 revised Chapter 32 R.S. 1903 (the Fish and Game Laws) and by Section 17 of revised Chapter 32 the Commissioners, then three in number, were given authority "in their discretion to compel" the owner of a dam above tidewater in any river or stream "frequented by salmon, landlocked salmon, shad, alewives or other migratory fishes" to provide a fishway. The Kennebec River is not declared a fishing district and by Section 2 of the Chapter 206 all inconsistent acts and provisions "not incorporated in this act" were repealed.

By Chapter 331 of the Public Laws of 1929 the supervision, administration and enforcement of the inland fish and game laws was given to a single Commissioner (Section 1) with an advisory council of seven members (Section 4) and lodged with the Commissioner (Section 5) the power to require a fishway in such a dam when he "determines it expedient." With some change in order of phrasing, that law has remained.

Only by Chapter 386 of the Public Laws of 1965 was the right to initiate a hearing to determine the expediency of a fishway in a dam given to "200 citizens," "majority of the County Commissioners" and the "Inland Fish and Game Legislative Committee."

There is nothing in this legislative history to support a contention that these petitioners have a claim *de jure* for a fishway in this dam. There is much in the legislative history, and supported by logic, that the legislature did not intend to require every dam above tidewater to have a fishway. The fish and game law revision of 1913 specifically removed the dams in the tidal waters of the Kennebec River from the category for which fishways could be required. It is also interesting to note that if the dam in question originated by

virtue of Chapter 489 of the Private and Special Laws of 1834, which authorized the Kennebec Dam Company to construct a dam "across the Kennebec River in Augusta * * * about half a mile above the Kennebec Bridge," while the legislature required that dam to have locks for the passage of boats and a fishway, the provision for the locks and the fishway was specifically repealed by Chapter 3 of the Private and Special Laws of 1895. In that event it could fairly be contended that the legislature has spoken with relation to this particular dam.

The statute is not mandatory.

*Delegation of power to Commissioner?*

What of contention A. 2? Basically "(t)he legislature may, except so far as it is restricted by the Constitution, establish such a system for the convenient administration of public affairs throughout its territorial limits as seems to it best." 49 Am.Jur., States, Territories and Dependencies § 38.

"The regulatory power of the state over fish and game within its boundaries may, to a certain extent, be delegated to a board or commission." 35 Am.Jur., 2d Fish and Game § 31.

Various applications of this principle "have been sustained against objections that they amount to an invalid delegation of legislative power." 35 Am.Jur., 2d Fish and Game § 31.

The issue was raised in McKenney et als. v. Farnsworth, 121 Me. 450, 452, 453, 118 A. 237, where plaintiffs sought to restrain the Commissioner of Sea and Shore Fisheries from enforcing a regulation pertaining to lobster fishing.

No constitutional or statutory limitation has been brought to our attention, nor do we find any, which prevents the delegation by the legislature of discretionary power to the Commissioner to determine the expediency of a fishway in a given

dam. Paraphrasing the words of the Court in *McKenney* at page 452, 118 A. 237, it would be quite impracticable for the legislature to gain the information which can be acquired only by experience and personal contact with the phases of fish control patently essential to intelligent action in the premises. The delegation of this responsibility seemed to the Court in *McKenney* as "the only practicable way in which the Legislature could accomplish the end in view." (Page 453, 118 A. page 239)

The expediency of a fishway in the Augusta Dam requires the evaluation of a number of considerations,—the fish involved, their value as a game or food fish, and of increasing significance, the environment offered such fish above the dam in question.

"The authority conferred is not a delegation of the legislative power." McKenney, supra, at page 453, 118 A. at page 239.

Similar conclusions have been reached in our neighboring states. Commonwealth v. Sisson, 189 Mass. 247, 75 N.E. 619, 621, 1 L.R.A.,N.S., 752 (1905); Payne & Butler v. Providence Gas Co., 31 R.I. 295, 77 A. 145, 158, statute quoted (Sec. 7) 161 (1910); Musgrove et al. v. Parker et al., 84 N.H. 550, 153 A. 320, [4] 322 (1931); and Elliott v. State Fish & Game Commission, 117 Vt. 61, 84 A.2d 588, [5] 592, [9] 593 (1951). These holdings were followed in the more recent cases of Commissioner of Natural Resources et al. v. S. Volpe & Co., Inc., 349 Mass. 104, 206 N.E.2d 666, 669 (1965); Opinion to the Senate, 87 R.I. 37, 137 A.2d 525, 526 (1958); State v. Langley, 92 N.H. 136, 26 A.2d 368, [1] 370 (1942) and Opinion of the Justices, 97 N.H. 533, 81 A.2d 845, [16] 850 (1951).

### Nuisance?

 A dam without a fishway is not per se a public nuisance. Only obstructions, *without legislative authority*, to navigation and to the passage of fish in navigable rivers (Dyer v. Curtis, 72 Me. 181, 184) or to the passage of boats, logs and rafts in "floatable" streams (Veazie v. Dwinel, 50 Me. 479, 486) are public nuisances per se. See also 17 M.R.S.A. § 2797 as to dams authorized by the "Mill Act."

 The record does not place the dam in controversy within the nuisance category.

### Appeal

 The right to review is statutory, Sears, Roebuck and Company v. City of Portland et al., 144 Me. 250, 255, 68 A.2d 12, or must be "otherwise available by law" Rule 80B M.R.C.P. (by extraordinary writ). There is no right of appeal given by statute, from the decision of the Commissioner. Petitioners appeal from dismissal of their complaint as an "appeal" is dismissed.

Petitioners appeal from dismissal of their complaint as a petition for Writ of Mandamus is denied.

So ordered.

DUFRESNE, J., did not sit.