Robert CHERENZIA et al.

v.

Patrick LYNCH, in his Official Capacity as Attorney General of the State of Rhode Island.[1]

No. 2002–613–Appeal.

Supreme Court of Rhode Island.

March 15, 2004.

1. Patrick Lynch has been substituted for Sheldon Whitehouse pursuant to Rule 25(d) of the Superior Court Rules of Civil Procedure.

Keith B. Kyle, Providence, for Plaintiff.

Michael W. Field, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

FLANDERS, Justice.

This is a fish story of a legal sort. A state statute bars any person from using a self-contained underwater breathing apparatus (SCUBA) to harvest shellfish at four named coastal ponds in the state. G.L. 1956 § 20–6–30, as enacted by P.L.2001, ch. 412, § 1. Dangling their constitutionally protected "rights of fishery, and the privileges of the shore," R.I. Const., art. 1,

sec. 17, before a Superior Court motion justice, the named plaintiffs—all of whom were commercial fishermen (hereinafter, the fishermen)—tried to hook this anti-SCUBA statute on various state constitutional provisions. After reviewing the parties' summary-judgment papers and hearing their arguments, a Superior Court motion justice swallowed their bait and declared the law to be unconstitutional. The defendant, who is the Attorney General of the State of Rhode Island (state), has appealed from that judgment.

The state argues that § 20-6-30 is a constitutionally valid exercise of the General Assembly's plenary power to regulate the state's fishing industry. The fishermen, however, contend that the motion justice correctly ruled that the General Assembly lacked any reasonable basis for depriving SCUBA divers of their occupation and that the provisions of § 20-6-30 therefore were unconstitutional. For the reasons cast in this opinion, we conclude that the motion justice erred in granting plaintiffs' motion for summary judgment, that the provisions of § 20-6-30 are consistent with the fishermen's "rights of fishery, and the privileges of the shore" that are set forth in art. 1, sec. 17, of the Rhode Island Constitution (constitution), and that this law does not otherwise violate the fishermen's rights under the due-process and equal-protection clauses of the constitution. Accordingly, convinced that the statute in question does not deprive these fishermen of their livelihood, unreasonably restrain their "rights of fishery," or otherwise violate their constitutional rights, we now reverse, vacate the judgment for the fishermen, and throw this statute back into the legal waters of this state so that it can sink or swim on its own merits as a legislated public policy.

### Facts and Travel

The fishermen began this action by filing a complaint challenging the constitutionality of § 20-6-30.[2] As previously noted, this statute prohibits any person from harvesting shellfish using a SCUBA at four coastal ponds: Green Hill Pond, Quonochontaug Pond, Charlestown Pond, and Potter Pond. Before the enactment of § 20-6-30 in 2001, see P.L.2001, ch. 412, § 1, the fishermen were using SCUBA to harvest shellfish from Potter Pond in South Kingstown. They then sold the shellfish to various wholesalers for resale to the public.

During the years 2000 and 2001, residents in and around Potter Pond noticed a decline in their ability to harvest shellfish for their own consumption and recreational use. The residents also believed that the SCUBA divers who were plying their trade in this area failed to use proper safety measures while fishing, interfered with the residents' navigation of the pond, trespassed on their private property, and failed to comply with the quantity limits set by the Rhode Island Department of Environmental Management (DEM), Division of Fish and Wildlife (DFW). Their concerns escalated when residents discovered that DFW was considering rescinding its previous regulation barring SCUBA shellfishing at three of the four ponds later named in § 20-6-30 (all except Potter

2. General Laws 1956 § 20-6-30 provides:
 "**Shellfishing prohibitions—Use of SCUBA.**—(a) It is hereby prohibited to take shellfish by the use of a self-contained underwater breathing apparatus (SCUBA) from Green Hill Pond, Quonochontaug Pond, Charlestown Pond, and Potters Pond.

 (b) *Penalty.* Any person convicted of taking shellfish as set forth in subsection (a) shall be punished by a fine of not more than five hundred dollars ($500) or by imprisonment not exceeding thirty (30) days, or both."

Pond) and opening other salt ponds in the area to SCUBA divers who wanted to harvest shellfish.[3] Ultimately, at least in partial response to the local residents' concerns, the General Assembly enacted § 20–6–30, prohibiting SCUBA divers from harvesting shellfish at these four specified coastal ponds. But it did not restrict the harvesting of shellfish in these areas by any other fishing method, nor did it restrict SCUBA shellfishing in any other area of the state.

In their legal memorandum supporting their motion for summary judgment, the fishermen argued that the statutory bar on harvesting shellfish using SCUBA was not rationally related to a legitimate state interest because it was not based on bona fide concerns about resource sustainability or about public-health risks at the affected ponds. If resource sustainability were the goal, the fishermen argued, then the state would have precluded all methods for harvesting shellfish, not just SCUBA harvesting. According to their expert in biological oceanography, certain shellfish in this area spawn prolifically, and harvesting poses no danger to their population—as long as those who are fishing there observe the size and catch limitations. The fishermen also cited a DEM report as evidence that no resource-sustainability issues existed to justify this legislation. Lastly, they noted the quantity and daily catch limits and suggested that these limitations already protected any legitimate concerns about sustaining this natural resource.

In response, the state acknowledged that § 20–6–30 was a product of legislative compromise between the conflicting interests of two groups: (1) local residents, who alleged that SCUBA divers not only had trespassed on their property—leaving a depleted shellfish stock for recreational fishermen—but also, by their presence in the water, created a safety problem for boaters on these ponds; and (2) commercial SCUBA divers, who vied for the right to continue harvesting shellfish. Thus, the state argued, it was the General Assembly's duty to strike a compromise between these competing claimants. Furthermore, the state maintained that economic and environmental-protection legislation such as this enjoys a presumption of constitutional validity, and that, if it so chooses, the General Assembly has plenary authority to impose stringent regulations on the fishing industry. Moreover, the state suggested that the statutory classification of SCUBA divers for adverse treatment in these limited fishing areas did not violate their equal-protection or due-process rights under the constitution.

In a bench decision comprising four sentences, the motion justice ruled that the General Assembly did not have a rational basis for "depriving those individuals [SCUBA-diving fishermen] of their occupation" and that the statute was thus unconstitutional. The court entered an order and a judgment granting the fishermen's motion for summary judgment and denying the state's cross-motion for summary judgment. The state filed a timely appeal.

On appeal, the fishermen submit that the statute violates their "rights of fish-

---

3. Rule 4.19 of the Marine Fisheries Statutes and Regulations provided:
"**Shellfishing by SCUBA or Skin Divers.**— No person making use of SCUBA diving equipment or breathing apparatus or skin diving equipment shall take any shellfish from the waters of Charlestown Pond, or Green Hill Pond, or Quonochontaug Pond until the 15th day of November, at which time it shall be legal to use SCUBA diving and breathing apparatus to harvest scallops for the remainder of the season in the designated ponds." R.I. Code R. 12 080 012, Marine Fisheries Statutes and Regulations, 4.19 (repealed 11/02/02).

ery," as guaranteed by art. 1, sec. 17, of the Rhode Island Constitution. In addition, they contend that § 20–6–30 arbitrarily discriminates against a single class of fishermen—those using SCUBA—in violation of art. 1, sec. 17. They also maintain that there is no legitimate state interest in prohibiting SCUBA shellfishing in the designated coastal ponds because such fishing does not implicate resource sustainability or public-health concerns. Thus, they argue, § 20–6–30 is an arbitrary and unreasonable exercise of legislative power because it advances no identifiable legitimate state interest, and, therefore, it violates the due-process and equal-protection provisions of art. 1, sec. 2, of the constitution.

The state counters that the statute enjoys a presumption of validity and that the fishermen have failed to prove beyond a reasonable doubt that the statute is unconstitutional. Additionally, the state contends, the statute is constitutionally valid because the General Assembly has plenary power to regulate the fishing industry. The state submits that the statute passes muster under an equal-protection analysis using the minimal-scrutiny test that applies to laws such as this because it merely regulates one limited aspect of the state's economy. Lastly, the state argues, the provisions of the statute neither "shock[ ] the conscience" nor implicate a fundamental right under our constitution; therefore, the fishermen's substantive due-process claims must fail.

### Analysis

■ We review a motion justice's grant of summary judgment on a *de novo* basis. *DiBattista v. State*, 808 A.2d 1081, 1085 (R.I.2002). This Court frequently has held that the power of the General Assembly to make and enact laws is broad and plenary, "save for the textual limitations * * * that are specified in the Feder-

al or State Constitutions." *City of Pawtucket v. Sundlun*, 662 A.2d 40, 44 (R.I. 1995) (*citing Kass v. Retirement Board of the Employees' Retirement System of Rhode Island*, 567 A.2d 358, 360 (R.I. 1989)). Because of the broad legislative power of the General Assembly, we presume the constitutional validity of legislative enactments. *E.g., Sundlun*, 662 A.2d at 45; *In re Advisory Opinion to the Governor, Rhode Island Depositors Economic Protection Corp. v. Brown*, 659 A.2d 95, 100 (R.I.1995); *Kennedy v. State*, 654 A.2d 708, 712 (R.I.1995); *Kass*, 567 A.2d at 360; *In re Advisory Opinion to the House of Representatives*, 485 A.2d 550, 552 (R.I. 1984). In passing on the constitutionality of a statute, the Court exercises its power to do so "with the greatest possible caution." *Gorham v. Robinson*, 57 R.I. 1, 7, 186 A. 832, 837 (1936). To be deemed unconstitutional, a statute must "palpably and unmistakably be characterized as an excess of legislative power." *Sundlun*, 662 A.2d at 44–45. Unless the party challenging the constitutionality of a statute can prove beyond a reasonable doubt that the act violates a specific provision of the constitution or the United States Constitution, this Court will not hold the act unconstitutional. *Id.* (citing *Gorham*, 57 R.I. at 7, 186 A. at 837).

■ Within the constitution's broad grant of legislative power to the General Assembly lies its plenary power to regulate the fishing resources of the state. *Opinion to the Senate*, 87 R.I. 37, 40, 137 A.2d 525, 526 (1958); *Jackvony v. Powel*, 67 R.I. 218, 225, 21 A.2d 554, 557 (1941); *State v. Kofines*, 33 R.I. 211, 239, 80 A. 432, 443 (1911). Indeed, "the whole subject of fisheries * * * and shellfish * * * wherever situate within the public domain of the State of Rhode Island, are under the fostering care of the General Assembly. It is for the [L]egislature to make such

laws and regulations, governing the subject * * * as they may deem expedient." *Kofines,* 33 R.I. at 239, 80 A. at 443 (quoting *Payne & Butler v. Providence Gas Co.,* 31 R.I. 295, 327, 77 A. 145, 158 (1910)). This power includes the ability to regulate the public or private fisheries, prohibit certain fishing methods, prescribe the duration of free fishing, and withhold from the public the use of shellfish beds. *Id.* at 239, 80 A. at 443. *See Opinion to the Senate,* 87 R.I. at 40, 137 A.2d at 526.

### (1) Equal Protection Claim

 The fishermen argue that § 20–6–30 violates the constitutional guarantee of equal protection under law, *see* R.I. Const., art. 1, sec. 2, because it illegally discriminates, as a class, against fishermen using SCUBA to harvest shellfish. Not all legislative classifications, however, are impermissible. *Kennedy,* 654 A.2d at 712. Indeed, the Legislature enjoys "a wide scope of discretion in enacting laws that affect some classes of citizens differently from others." *Boucher v. Sayeed,* 459 A.2d 87, 91 (R.I.1983). If a statute impinges on a fundamental right or creates a suspect classification, this Court must examine the statute with "strict scrutiny." *Kennedy,* 654 A.2d at 712. We will employ a "minimal-scrutiny" analysis, however, when assessing economic or social regulations that neither infringe on a fundamental right, nor result in a classification that is "suspect." *See id.*

 Legislation can implicate a fundamental right—one that is protected by either the state or the federal constitution, or by both of them—in one of several ways. A protected interest may arise when the legislation in question infringes on an expressly enumerated constitutional right, such as freedom of speech or the right to assembly. *In re Advisory Opinion to the House of Representatives,* 519 A.2d 578, 582 (R.I.1987). A law also can implicate a fundamental right when the statute impinges upon interests fundamental to our concept of ordered liberty, such as the right to privacy or the right to travel. *Id.* This Court has noted that the United States Supreme Court has not defined "with exactness" the scope of the liberty interests protected by the Fourteenth Amendment to the United States Constitution, but that such interests include freedom from bodily restraint, the right of the individual to contract, the right of the individual to engage in the common occupations of life, and "generally to enjoy those privileges long recognized * * * as essential to the orderly pursuit of happiness by free men." *Lynch v. Gontarz,* 120 R.I. 149, 156, 386 A.2d 184, 188 (1978) (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). A legislative classification also is suspect, and therefore subject to strict scrutiny, if the act in question discriminates based on "race, alienage, or national origin." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

Here, the provisions of § 20–6–30 neither infringe on a fundamental constitutional right, nor do they create a suspect classification. The scope of the fundamental right protected in art. 1, sec. 17, is that all the inhabitants of the state "shall continue to enjoy and freely exercise" equal access to the state's fishery resources.[4]

---

4. Article 1, section 17, of the Rhode Island Constitution provides, in pertinent part:

"The people shall continue to enjoy and freely exercise all the rights of fishery, and the privileges of the shore, to which they have been heretofore entitled under the charter and usages of this state, including * * * fishing from the shore * * * and they shall be secure in their rights to the use and enjoyment of the natural resources of the

*See Kofines,* 33 R.I. at 223, 80 A. at 437 (defining the term "people," as used in the constitution, to include all the inhabitants of the state); *In re Incurring of State Debts,* 19 R.I. 610, 613, 37 A. 14, 15 (1896) (same). This "gives the benefits of fishery to all the people in equal measure." *Opinion to the Senate,* 87 R.I. at 38, 137 A.2d at 525–26. This Court has held that art. 1, sec. 17 "was intended to be carried into effect by legislative regulation, such regulation having for its object to secure to the whole people the benefit of the constitutional declaration." *State v. Cozzens,* 2 R.I. 561, 563 (1850). In fact, "legislative restriction is indispensable to secure to the public the benefit of the * * * fishery" and effectuate the intended scope of the constitutional right. *Id.* at 564. Thus, the very nature and scope of the right to fish that art. 1, sec. 17 protects is not unqualified; rather, it anticipates that reasonable legislative regulation is necessary to properly effectuate that right.

If a statute or regulation contained restrictions that infringed upon the fundamental right of the inhabitants of the state to have equal access to the "rights of fishery," then such a regulation or law would be subject to strict-scrutiny analysis. *See Kennedy,* 654 A.2d at 712. Here, however, the provisions of § 20–6–30 do not infringe on the fishermen's fundamental right of equal access to the state's resources because no fundamental constitutional right exists for inhabitants of this state to harvest shellfish from specific bodies of water by using a specific method of fishing. On the contrary, we have interpreted art. 1, sec. 17 to mean that "fishing

must be carried on for the ultimate benefit of the people of the state and not merely for the profit and emolument of the fishermen engaged in the business." *Opinion to the Senate,* 87 R.I. at 38–39, 137 A.2d at 526. Because the provisions of § 20–6–30 do not deny the fishermen equal access to the shellfish populations in the designated salt ponds, the provisions of § 20–6–30 do not infringe on this fundamental constitutional right.

In addition, contrary to the motion justice's finding, prohibiting only one method of harvesting shellfish (that is, via SCUBA) from only four specified ponds in the state does not deny these fishermen their livelihood or occupation because they all may still harvest shellfish—even with the assistance of SCUBA—in areas other than the four salt ponds in question. In addition, the fishermen concede that alternative, albeit less efficient, means of harvesting shellfish are still available for them to use at the specified four coastal ponds that are subject to the SCUBA ban. Therefore, the provisions of § 20–6–30 violate no fundamental constitutional "rights of fishery" by prohibiting the harvesting of shellfish just by one particular method in such limited fishing areas.

The fishermen rely upon *Opinion to the Senate* for the proposition that the classification in § 20–6–30 unconstitutionally discriminates against them. In that advisory opinion, the justices noted that a legislative act that "permit[ted] one class of citizens to take these fish while prohibiting entirely the taking thereof by another class of citizens, as for example those who

state with due regard for the preservation of their values; and it shall be the duty of the general assembly to provide for the conservation of the air, land, water, plant, animal, mineral and other natural resources of the state, and to adopt all means necessary and proper by law to protect the natural

environment of the people of the state by providing adequate resource planning for the control and regulation of the use of the natural resources of the state and for the preservation, regeneration and restoration of the natural environment of the state."

resort to fishery for commercial purposes[,] * * * would be invalid as discriminatory." *Opinion to the Senate,* 87 R.I. at 39, 137 A.2d at 526. But that is not the type of classification found in § 20–6–30. This statute prohibits any person—not just commercial fishermen—from using only one type of available means for harvesting shellfish (namely, SCUBA) and from doing so only in four named coastal ponds. This is a far cry from the sweeping prohibition aimed at just one "class of citizens" that the justices opined would be unlawful in *Opinion to the Senate.* Moreover, the fishermen who use SCUBA to harvest shellfish at these four designated ponds do not constitute a suspect classification as either this Court or the United States Supreme Court has defined that term. *See City of Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249.

Because the limitations imposed by § 20–6–30 do not implicate the constitutionally protected "rights of fishery," this Court will forgo a strict-scrutiny analysis and employ only a minimal-scrutiny test to assess whether a rational relationship exists between the provisions of § 20–6–30 and a legitimate state interest. Under this analysis, if we can conceive of any reasonable basis to justify the classification, we will uphold the statute as constitutional. *See Kennedy,* 654 A.2d at 712–13 (citing *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)).

Article 1, section 17, of the constitution charges the Legislature with the "duty" to conserve and protect the state's fishery resources by providing "adequate resource planning for the control and regulation of the use of the natural resources." Because the fishery resources of the state must be preserved and protected for use by all the inhabitants of the state—and not just for the profit of commercial fishermen—a statutory provision that eliminates

only one particular method by which those fishermen and all others may harvest shellfish from four designated coastal ponds ensures that the shellfish in those ponds remain available to both commercial and non-commercial fishermen "in equal measure." *Opinion to the Senate,* 87 R.I. at 38, 137 A.2d at 525–26. Residents in and around the coastal ponds who engage in non-commercial harvesting of shellfish may have practical access to these shellfish populations only in these immediate areas, while commercial fishermen presumably have greater access to shellfish at other locations in which they may seek to harvest this resource. Slowing down the rate at which the shellfish in these limited areas can be harvested by eliminating the most efficient method for doing so also may tend to lessen the likelihood that all fishermen in these areas will confront depleted stocks of shellfish. The provisions of § 20–6–30, therefore, are not " 'wholly irrelevant' " to the achievement of the state's objective to protect the resources of the state so that they can be enjoyed by all the inhabitants of the state who wish to access them. *Kennedy,* 654 A.2d at 712.

Also, given the residents' complaints about increased boating safety risks in pond areas where SCUBA divers are present, this law will tend to lessen such concerns by eliminating a potential source of boating accidents and personal injuries to divers and boaters alike.

The fishermen next assert that because they are subject to size and daily catch limits, the General Assembly already has protected the fishery resources of the state. In addition, they contend that because all commercial fishermen—even those using traditional methods of harvesting shellfish—are subject to the same size and daily catch limits, the General Assembly lacked a justifiable resource-sustainability goal in enacting § 20–6–30. This

contention, however, overlooks the fact that the duty of the Legislature is to preserve the state fishery resources for all the inhabitants of the state, even those who seek, for example, merely to harvest shellfish for their own personal recreation and consumption. This constitutional responsibility may include not only regulating size and daily catch limits, but also regulating the methods by which fishing may occur. *See Opinion to the Senate,* 87 R.I. at 38–40, 137 A.2d at 525–26. The DEM report, cited by the fishermen, acknowledged that harvesting shellfish, with the assistance of SCUBA, is "selective and efficient." Therefore, eliminating the use of this relatively more effective harvesting method is a reasonable means of preserving this shellfish population for access in the designated coastal ponds by both commercial and non-commercial fishermen alike. Moreover, given that SCUBA divers largely operate below the surface of the water, policing size and catch limitations for these divers might prove more difficult than enforcing such limitations when fishermen use more conventional fishing methods. In any event, the General Assembly reasonably could have concluded that the provisions of § 20–6–30 would tend to advance this legitimate state interest in effectively adhering to size and catch limitations. For all these reasons, we hold that the statute does not violate the equal-protection guarantee in art. 1, sec. 2.

### (2) Due–Process Claim

■■■■ To prevail on a substantive due-process claim, a successful plaintiff must show either that the statute in question violates a constitutionally protected liberty or property interest or "that the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Brunelle v. Town of South Kingstown,* 700 A.2d 1075,

1084 (R.I.1997) (quoting *Sinaloa Lake Owners Association v. City of Simi Valley,* 882 F.2d 1398, 1407 (9th Cir.1989)). In addition to enacting laws that protect the public's health, safety and welfare, the General Assembly, pursuant to our constitution, is charged with the duty to protect and conserve the fishery resources of the state. Because a substantial relationship exists between the anti-SCUBA legislation in question and the Legislature's above-described constitutional duty to protect and conserve these resources, the challenged statute is sufficient to meet this minimal-scrutiny test.

As discussed above, the fishermen possess no fundamental constitutional right to harvest shellfish with the assistance of SCUBA at the four ponds in question. Therefore, the burden was on them to prove beyond a reasonable doubt that the provisions of § 20–6–30 lacked a substantial relation to the public health, safety, and welfare, or to the Legislature's constitutionally prescribed duty to protect and conserve the fishery resources of the state. As previously noted, the provisions of § 20–6–30 are reasonably related to the legitimate conservation of the state's shellfish resources and to the interests of greater boating safety in the area. Therefore, the statute does not violate the due-process protections of art. 1, sec. 2, of the constitution.

### Conclusion

For these reasons, we reverse, vacate the motion justice's grant of summary judgment to the fishermen, and hold that § 20–6–30 is a constitutionally valid exercise of the General Assembly's broad power to conserve and protect the fishery resources of this state. The papers in this case shall be remanded to the Superior

Court for the entry of a judgment in favor of the state.