DECISION
Defendants Town of Smithfield, et al. (collectively "Defendants") move for summary judgment. Defendants move for judgment in their favor on Count I and as much of Count III that pertains to Count I of the Complaint of Chuck and Sons Towing, Inc. and Charles Jepson, Jr. (collectively "Plaintiffs"). Count I of Plaintiffs' Complaint requests this Court to either declare facially unconstitutional the written tow list policy of *Page 2 
the Smithfield Police Department ("Department"), or, in the alternative, declare that the tow list policy was unconstitutionally applied to Plaintiffs in violation of their equal protection rights as afforded by the Rhode Island Constitution. Plaintiffs object to said Motion and move for Summary Judgment in their favor on Count I. Jurisdiction is pursuant to Super. R. Civ. P. Rule 56 and G.L. 1956 § 9-30-1 et seq.
 FACTS AND TRAVEL
Chuck and Sons Towing, Inc. is a Rhode Island corporation, with its principal place of business in Smithfield, Rhode Island. Charles Jepson, Jr. is an owner and employee of Chuck and Sons Towing, Inc. In order to perform tow service for Smithfield or the Department, the tow service company must be on the approved list. The Department maintains a list of approved tow service companies which it uses for its consensual and non-consensual towing needs. Currently, that list contains only two companies; Plaintiffs herein seek to become the third.
The Department maintains a written policy and set of minimum standards with regard to the tow service companies used ("Policy"). These minimum standards include, among other things, requirements that the tow service companies possess certain accessories and equipment, a large facility within Smithfield, Rhode Island, and a certain level of insurance coverage. The minimum requirements also mandate that all operators of the tow vehicles have a valid driver's license and a satisfactory driving record. The companies themselves are also required to maintain a satisfactory record with the Public Utilities Commission and the Better Business Bureau.
In order to add a company to that list, the Department has created an application process. In addition to maintaining the above-mentioned requirements, the applicant tow *Page 3 
service company is subjected to a rigorous background check by the Department upon submission of the application. The minimum requirements to filing an application include many of the same requirements imposed on the incumbent tow service companies. The application process vests the Chief of Police with discretion to approve or reject an application, as well as the power to remove a tow service company already on the list. Companies are added or removed "according to their service records and consistent with the needs of the Department." (Tow List Application 3, ¶ A.) Further, "[i]n deciding the suitability of an applicant for placement on the tow list, the Chief of Police shall consider any and all relevant information and ensure that the placement of the applicant's company on the tow list is in the best interest of the Smithfield Police Department and the Town of Smithfield." (Tow List Application 4, ¶ D(12).)
Plaintiffs have applied to become a member of the approved tow service list several times over the last ten years. They applied in 1997, 1998, and 2001, and submitted an application once again in March 2005 to the then-Chief of Police, William McGarry ("McGarry"). With regard to this most recent application, McGarry delegated the task of review to Captain Robert Beaudry ("Beaudry"). On April 5, 2005, after a thorough review and after having received the written report from Beaudry ("Report"), McGarry informed Plaintiffs that their application had once again been rejected.
Following the rejection of their application, Plaintiffs sought a more comprehensive explanation as to the procedure and reasons behind rejecting their latest application. On May 3, 2005, the Smithfield Town Solicitor informed Plaintiffs that the Town of Smithfield and the Department were pleased with the two current members of the tow list and they did not seek to jeopardize the service they already received. The *Page 4 
Town Solicitor informed Plaintiffs that it was simply in the best interests of the Department to reject the application. Undeterred, Plaintiffs filed an Access to Public Records request on October 28, 2005, seeking discovery of not only the Report, but also the records on file of the two tow service companies currently used by the Department.
The application and the Report were provided to Plaintiffs. One of the final paragraphs in the Report evidences that Beaudry discovered and considered the expunged criminal record of Charles Jepson ("Jepson"). While the Report cites the expunged crime as a felony, a disqualifying factor to any application, the crime, in fact, was a misdemeanor. It is clear from the last page of the Report that Beaudry relied solely on Jepson's "criminal history" to form his recommendation of rejection to McGarry. (Beaudry Report 8.) Beaudry reports that ". . .the only disqualifying information within this investigative report is Mr. Jepson's criminal history." (Id.) It is unclear from the Report, precisely how much of Jepson's "criminal history" Beaudry considered in making that recommendation. According to the Beaudry Report, Jepson has a "violent and verbally abusive" history. (Beaudry Report 7.) Jepson's neighbors have complained to the Johnston Police Department about verbal attacks, and Jepson had a restraining order filed against him in 2001 for "`extremely verbally abusive' behavior." Id. Further, Jepson was also involved as a suspect in a case involving the physical abuse of one of his children. (Beaudry Report 8.) Plaintiffs contend that in this line in the Report, Beaudry was referring solely to the expunged criminal record and therefore based his recommendation on only that part of Jepson's "criminal history."
The records on the two current tow service providers could not be located. As a result, McGarry allegedly ordered an investigation of them. This inquiry, it is alleged by *Page 5 
Defendants, concluded that the current operators of both companies currently on the tow service list meet the qualifications for inclusion on the tow service list.
Plaintiffs have sued the Town of Smithfield, the members of its Town Council in their official capacities, its Finance Director in his official capacity, the Department, the actual and acting Chief of Police in their official capacities, and a captain of the Department in his official capacity. They filed their Verified Complaint and requests for declaratory and injunctive relief on May 9, 2006. Defendants filed an Objection thereto and then moved for Summary Judgment. In response, Plaintiffs responded to Defendants Motion for Summary Judgment through an Objection and cross-moved for Summary Judgment. Both Defendants' and Plaintiffs' Motions for Summary Judgment are now before the Court. STANDARD OF REVIEW
Summary judgment is a "drastic remedy to be granted sparingly only when a review of all pleadings, affidavits, and discovery materials properly before the court demonstrates that no issue of fact material to the determination of the lawsuit is in genuine dispute." Superior BoilerWorks, Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 631 (R.I. 1998). If no genuine issue of material fact exists, the court must then determine whether the moving party is entitled to judgment as a matter of law.Alfano v. Landers, 585 A.2d 651, 652 (R.I. 1991).
A party opposing a motion for summary judgment has an affirmative duty to set forth specific facts that show that there is a genuine issue of material fact to be resolved at trial. Accent Store Design, Inc. v.Marathon House, Inc., 674 A.2d 1223, 1225 *Page 6 
(R.I. 1996). "A party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers ofCranston, Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted.Grande v. Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
 ANALYSIS A. Statute of Limitations
Defendants argue that Plaintiffs' claim of facial unconstitutionality of the Policy is time barred. Section 9-1-14 — limitations periods for personal injuries — provides that the action "shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after." Generally, the statutory limitations period commences when a party is injured. DeSantis v. Prelle, 891 A.2d 873, 878 (R.I. 2006). However, Defendants note that when making a constitutional challenge based on facial validity, the statute of limitations begins to run upon the enactment of the challenged provision. L.A. Realty, et al.v. Town Council of Cumberland, et al., 698 A.2d 202, 220 (R.I. 1997) (Flanders, J., dissenting); see generally Maldonado v. Harris,370 F.3d 945 (9th Cir. 2004); Dunn-McCampbell Royalty Interest,Inc. v. National Park Service, 112 F.3d 1283 (5th Cir. 1997);Levald, Inc. v. City of Palm Desert, 998 F.2d 680 (9th Cir. 1993) (emphasis added). Here, Defendants allege that the Policy, or something extremely similar to it, was adopted in 1997 by the-then Chief of Police. Consequently, Defendants argue, the statute of limitations began to run at that moment, well over three (3) years *Page 7 
ago. For that reason, they argue, this Court must bar Plaintiffs' claim, as it was filed more than three (3) years after the Policy's adoption.
In opposition, Plaintiffs argue that their facial challenge to the Policy is not time barred because, in general, causes of action accrue at the moment the injury occurs. Kelly v. Marcantonio, 678 A.2d 873, 878
(R.I. 1996) (citation omitted). Claims may also accrue, they argue, when the injured party knows or has reason to know of the injury. CentroMedico del Turabo, Inc. v. Feliciano De Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (citation omitted). Plaintiffs seek to distinguish the case law relied upon by Defendants by noting that in this case, the Policy is not subject to the public inspection normally imposed upon an enacted statute, regulation, or ordinance. They assert that the Policy is an internal set of regulations promulgated by the Chief of Police, and receives little or no public scrutiny until a tow company applies to be placed on the tow list. Accordingly, they argue, the rule of law imposed on public enactments should not apply to the Policy.
Here, the Department adopted the Policy, or something extremely similar to it, in 1997. It is undisputed that Plaintiffs have applied for inclusion on the tow list three separate times prior to their 2005 application: once in 1997, 1998, and 2001. Plaintiffs saw the Policy in each of those three years, but yet did not challenge it on its face as they do here. Plaintiffs were on notice, therefore, of the Policy's alleged facial unconstitutionality on three separate occasions prior to instituting this lawsuit, most notably after the Department rejected their 1997 application. Whether this Court adopts Defendants' or Plaintiffs' argument is wholly irrelevant because under either theory, the claim accrued in 1997. Under Defendants' theory, the statute of limitations began to run upon the enactment of the Policy in 1997. Alternatively, under Plaintiffs' theory, the *Page 8 
statute of limitations also began to run in 1997, because that is the moment at which they knew or should have known of any facially unconstitutionalities with respect to the Policy. Centro Medico delTurabo, Inc., 406 F.3d at 6 (citation omitted). Therefore, the statute of limitations in § 9-1-14 began to run, at the latest and most favorably to the Plaintiffs, following the rejection of that 1997 application, as it was at that point in time when Plaintiffs first became aware of the Policy. Section 9-1-14 sets a three year limitations period, and as such, this suit was filed well after three years following the rejection of Plaintiffs' 1997 application. Accordingly, this Court grants Defendants' summary judgment on this issue of whether Plaintiffs' facial challenge to the Policy is time bared, and forecloses any constitutional facial challenge to the Policy.
 B. Constitutional Facial Challenge
Assuming arguendo that Plaintiffs timely filed the instant matter, Plaintiffs' Summary Judgment motion challenges the Policy on its face as being violative of their equal protection rights. Defendants contend that the Policy itself is facially valid under constitutional scrutiny. Upon reviewing the face of the Policy, this Court notes the first sentence in the Policy reads: "To promote a safer, more professional working environment, towing companies that are currently on or haverequested to be placed on the Smithfield Police Tow List will be required to meet the following minimum . . . standards." (Tow List Application 1, ¶ I.) (Emphasis added.) Further, the powers of the Department include both the ability to add companies to the list, as well as remove companies from the tow list "according to their service records and consistent with the needs of the Department." Id. at 3, ¶ A. (emphasis added.) Additionally, the Policy grants the Chief of Police, in this case McGarry, with the sole power of review of all *Page 9 
applications for inclusion on the tow list submitted to the Department. (Tow List Application 3-4.) The United States Supreme Court, inUnited States v. Salerno, 481 U.S. 739 (1987) (relied upon by the First Circuit in Comfort v. Lynn School Committee, 418 F.3d 1 (1st Cir. 2005)), announced the standard by which facial challenges must be evaluated.[1]
To successfully execute a facial challenge, "the challenger must establish that no set of circumstances exists under which the [challenged law] would be valid." Id. at 745. A facial challenge is thus recognized as "the most difficult challenge to mount. . ." against an enacted law. Id. Further, as the Policy involves neither a suspect class, nor a fundamental right, it is entitled to a strong presumption of validity. Heller v. Doe, 509 U.S. 312, 319 (1993). In addition, this Court is mindful that the right to equal protection of the law "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." Romer v. Evans, 517 U.S. 620, 631 (1996) (citations omitted.) Simply stated, "if a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." Id.
Plaintiffs' facial challenge to the Policy is unavailing. Plaintiffs allege that an impermissible distinction has been made on the basis of whether a tow company is an applicant or is already an approved provider on the list. In actuality, this Court finds there is no such distinction on the face of the Policy. Not only does the Policy lack a distinction between the groups, it instead, juxtaposes them several times. The Policy's first sentence explains that both the applicant and incumbent tow companies must *Page 10 
maintain the minimum standards proscribed therein. (Tow List Application 1.) Further, the powers of the Department include both the ability to add companies to the list, as well as remove companies depending on the calculated need and desires of the town, the Department, and the Chief of Police. Id. at 2. The only possible distinction appears in the description of the Chief of Police's power with regard to accepting and evaluating applications. There, the Policy describes other minimum requirements imposed on only the applicant tow companies. This discretion vested in the Chief of Police, however, does not create a facially violative distinction because it had to be applied at some prior time to the currently approved companies, just as it does now to applicants.
Assuming there was a distinction between applicant and approved tow companies on the face of the Policy, the claim still fails as tow list applicants are not a suspect class, and inclusion on the tow list is not a fundamental right. As long as the Department has a rational basis for creating a distinction, then it is permissible. Romer, 517 U.S. at 631. This Court recognizes that there are a myriad reasons why the Department would engage in disparate treatment between an approved company and an applicant company, including but not limited to the Department's familiarity with the approved companies; the Department's relationship with the approved companies; and the Department being accustomed to a level of service from the approved companies that it does not think the applicant can or will provide. As the Department is subjected to the mere rational basis test, any legitimate reason will be sufficient as a basis for disparate treatment. Heller, 509 U.S. at 319. Here, the Department informed Plaintiffs that their application was rejected due to the Chief of Police's determination that there was no need and it was neither in the best interest of the town nor the Department to add another tow company. *Page 11 
Accordingly, this Court denies Plaintiffs' Motion for Summary Judgment based on its constitutional facial challenge to the Policy. Alternatively, this Court grants Defendants summary judgment on this issue.
C. Constitutional "As Applied" or "Selective Enforcement"Challenge
Plaintiffs further contend that even if the Policy is facially valid, the method of enforcement is in derogation of the protections afforded by the law of equal protection. Defendants declare that Plaintiffs do not meet the requirements to sustain a constitutional challenge of the Policy as it was applied to the Plaintiffs. Plaintiffs and Defendants each set forth a legal framework through which they allege this Court must evaluate the enforcement of the Policy. Defendants citeProvidence Teachers' Union Local 958 v. City Council of Providence,888 A.2d 948 (R.I. 2005) for a proper statement of "selective enforcement" law. Defendants contend that Plaintiffs must show: (1) that Plaintiffs compared with others similarly situated, were selectively treated and (2) that such selective treatment "was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Id. at 954 (citations omitted.) Plaintiffs, however, contend that this Court must apply the rule in Village of Willowbrook v.Olech, 528 U.S. 562 (2000), wherein the Supreme Court applied a "class of one" equal protection analysis. Under this theory, Plaintiffs must show that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference." Id. at 564. Both tests have been used by the Supreme Court of the United States and various circuit courts in equal protection cases. *Page 12 
Both standards require a determination of whether Plaintiffs are similarly situated to the party receiving allegedly more favorable treatment. Technically, Plaintiffs and the two towing service companies currently on the Department's tow list are identical. All three companies exist to perform the same function — tow cars. Further, all companies meet or exceed the minimum requirements imposed in the Policy, such as location of business, ownership of certain pieces of towing equipment, and possession of adequate insurance coverage. However, the fact that Plaintiffs are applicants to the tow list whereas the other two companies are incumbent, approved companies already on the list cannot be ignored. By definition, an applicant, such as Plaintiffs, seeks admission into an organization, whereas an incumbent, such as Defendants, currently holds a position within the organization.Webster's II New College Dictionary 55, 562 (2001). If Plaintiffs were in the identical position as the two companies currently on this list as alleged, then they would already be on the list and not suing to gain access. Accordingly, this Court finds that Plaintiffs and the two companies on the tow list are not similarly situated.
Assuming arguendo that this Court found Plaintiffs to be similarly situated, and therefore satisfying the first prong of both Plaintiffs' and Defendants' equal protection tests, Plaintiffs' claim still must fail because there was a rational basis for Defendants' actions. Under the Providence Teachers' Union test, our Supreme Court has stated, "[a] person bringing a selective enforcement claim must show that the decision to treat him or her differently from others `is wholly `arbitrary or irrational.'" State v. Partington, 847 A.2d 272, 279-280
(R.I. 2004) (citations omitted.) Here, Plaintiffs must show that Defendants' disparate treatment was based on "impermissible considerations such as *Page 13 
race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Providence Teachers' Union, 888 A.2d at 954. (Citations omitted.) Similarly, under Olech, Plaintiffs must show that there is no rational basis for Defendants' disparate treatment. Olech,528 U.S. at 564.
In this case, Plaintiff is neither a member of a suspect class, nor are any of its fundamental rights at stake. Therefore, Plaintiffs must show that McGarry's decision did not have a rational basis.Romer, 517 U.S. at 631; Providence Teachers' Union, 888 A.2d at 954;Olech, 528 U.S. at 564. McGarry testified under oath at his deposition that the decision to reject Plaintiffs' application was his decisionalone, and that he considered more than just the Beaudry Report. (McGarry Depo. 53.) (Emphasis added.) Therefore, because McGarry alone was the final decision-maker, only the information he used in forming his determination will be evaluated in the context of the rational basis test. Further, as this matter is before the Court on motions for summary judgment, only "material facts" not in dispute will be considered by this Court.[2]Super. R. Civ. P. Rule 56. If this Court finds that McGarry's decision was adequately supported by a rational basis, then Plaintiff's claim must fail. Providence Teachers' Union,888 A.2d at 954; Olech, 528 U.S. at 564. The Rhode Island Supreme Court has often referred to the rational basis test as a "minimum-scrutiny" test, used to determine "whether a rational relationship exists between [the challenged act or actions] and a legitimate state interest."Cherenzia v. Lynch, 847 A.2d 818, 825 (R.I. 2004). If there is "any reasonable basis to justify the classification," it will survive constitutional scrutiny. Id. *Page 14 
Included in the evidence before the Court is part of the transcript of Plaintiffs' deposition of McGarry. At that deposition, McGarry testified that his decision to reject Plaintiff's application involved, among other things, evaluating the best interests of the Town of Smithfield. (McGarry Depo. 54-55.) In stating that the Department "already had two towing companies on the list" and "[was] very pleased with that current arrangement," McGarry reveals that his decision was based, at least "in part," on the determination that "the Town of Smithfield didn't need another tow service company added to its list." (McGarry Depo. 55-56.) In fact, at some point, McGarry made the decision to limit the tow service providers to the two companies because of the high level of service they received and a fear that "tinker[ing] with the tow list" would not be in the "best interest of the town." (McGarry Depo. 58-59.) There has been no evidence submitted to this Court contradicting this testimony, and neither party has challenged its truthfulness. The line of analysis followed by McGarry mirrors the discretionary authority delegated to him in the Policy, namely that his decision must be based largely on what was best for the town and Department, and what need, if any, existed for a third tow company. (Tow List Application 4, ¶ D(12) and 3, ¶ A.). This Court is satisfied that McGarry's decision — even when examined with reference only to this part of his decision, not including anything in the Beaudry Rerport — was rationally related to the legitimate interests of the town and Department. Cherenzia v.Lynch, 847 A.2d at 825. In light of the foregoing, because this Court finds that the basis upon which McGarry formed his ultimate decision was rational, it provides an adequate basis on which to reject Plaintiffs' application. *Page 15 
Plaintiffs also contend that the application was denied solely on the allegedly impermissibly attained expunged criminal record of Jepson, and that this alone cannot form a rational basis. Further, at oral argument, Plaintiffs noted that if there is a question of fact as to what comprised the entirety of the basis of McGarry's decision, then this Court cannot grant summary judgment. On a motion for summary judgment, it is the duty of this Court to first determine if any of thematerial facts are in dispute. Super. R. Civ. P. Rule 56 (emphasis added). If there is a question of material fact, then this Court cannot grant summary judgment. A material fact is one that has "the potential to affect the outcome of the suit." MacGlashing v. Dunlop Equipment Co.,Inc., 89 F.3d 932, 936 (1st Cir. 1996); Hawkins v. Mary Hitchcock Mem'lHosp., 22 F. App'x 21, 22-23 (1st Cir. 2001).
In the case at bar, identifying the level to which McGarry relied on the information in the Beaudry Report is not a material fact, because even if the report did not exist, McGarry's decision was based on enough information to survive a rational basis test. Hawkins, 22 F. App'x at 23. In Hawkins, a prospective employer rejected an African-American woman's job application, after which she filed a lawsuit based on race discrimination. Id. at 22. The court acknowledged that there were factual disputes as to the content and effect of "unflattering references," but concluded those factual disputes to be immaterial because the prospective employer could have rejected the application on several other sufficient grounds. Id. at 23. Similarly, though McGarry testified that "part" of the determination to reject Plaintiffs' application included a consideration of the Beaudry Report, the existence of that fact alone does not affect the outcome of the suit because McGarry possessed enough information, without the report, upon which he could rationally base his *Page 16 
rejection of Plaintiffs' application. MacGlashing, 89 F.3d at 936
(holding alleged factual dispute will not preclude summary judgment when that fact is immaterial to the outcome of the suit); Hawkins, 22 Fed. App'x at 23. This Court is satisfied that McGarry's consideration of the best interests and needs of the town alone form a rational basis on which he made his decision. Hawkins, 22 Fed. App'x at 23. Accordingly, this Court denies Plaintiffs' Motion for Summary Judgment on its constitutional challenge to McGarry's decision and grants to Defendants summary judgment on said issue.
 CONCLUSION
After reviewing the evidence and the memoranda submitted by the parties, this Court grants Defendants Motion for Summary Judgment on Count I of Plaintiffs' Complaint, and denies Plaintiffs' Motion for Summary Judgment on the same. Based upon this Court's ruling herein, Plaintiffs' prayers for equitable relief in Count III of Plaintiffs' Complaint, as they pertain to Count I, must also be denied. Counsel shall submit an Order consistent with this Decision.
[1] Some areas of law have avoided Salerno due to its very high burden. For example, in the area of abortion, courts have generally not evaluated laws and the facial challenges to them pursuant toSalerno. See Planned Parenthood v. Miller, 63 F.3d 1452, 1458 (8th Cir.1995).
[2] A "material fact," which if disputed will prevent a court from granting summary judgment, is defined as having the potential to affect the outcome of a lawsuit. See MacGlashing v. Dunlop Equipment Co.,Inc., 89 F.3d 932, 936 (1st Cir. 1996); Leary v. Dalton, 58 F.3d 748,751 (1st Cir. 1995).