STATE of Rhode Island

v.

Brian FARIA.

No. 2006–278–M.P.

Supreme Court of Rhode Island.

May 23, 2008.

Dawson M. Hodgson, Esq., for plaintiff.

John F. Cicilline, Esq., for defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

We consider in this case an equal-protection challenge to statutory provisions that prohibit convicted felons from seeking the destruction and/or sealing of certain police and court records relating to criminal cases in which they have been acquitted or otherwise exonerated. We issued a writ of certiorari to review a District Court decision granting motions to destroy and to seal records of the defendant, Brian Faria, under G.L. 1956 §§ 12–1–12 and 12–1–12.1. For the reasons set forth in this opinion, we reverse the decision.

## I

### Facts and Procedural History

In February 2006, Mr. Faria was arrested and charged in the District Court with two counts of unlawful possession of a controlled substance. According to defendant, a subsequent investigation revealed that the alleged controlled substances were, in fact, prescription medications belonging to a disabled friend who accidentally had left them in defendant's car. As a result, the Attorney General declined to file a criminal information, concluding that there was "insufficient evidence to warrant a felony prosecution." Thereafter, defendant moved to destroy "all records of his arrest and exoneration" pursuant to § 12–1–12.[1] In a separate filing, defendant also

---

1. General Laws 1956 § 12–1–12 states in per- tinent part:

requested that the court records relating to the complaint "be sealed and/or expunged," apparently relying upon § 12–1–12.1.[2]

Sections 12–1–12 and 12–1–12.1 allow for the destruction of certain police records and the sealing of court records, but neither section permits relief for persons previously convicted of a felony offense. Because Mr. Faria had been convicted of a felony in the past, the letter of the statute precludes the destruction or sealing of records relating to the two counts of unlawful possession of a controlled substance. The defendant argued in support of his motions to destroy and to seal that §§ 12–1–12 and 12–1–12.1 deny him "equal protection of the law as guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments." He contended that the statutes unconstitutionally discriminate against persons with previous felony convictions because such classification bears no reasonable relationship to the public health, welfare, or safety.

The state objected to Mr. Faria's motion to destroy in the District Court, arguing that the legislative classification is rationally related to a legitimate state interest. The state asserted that defendant has the burden of attacking the constitutionality of the statutes, and that he had failed to overcome the burden of negating every conceivable basis that might support the legislative classification. The state maintained that a legitimate state interest existed, viz., the interest in maintaining a comprehensive history of a felon's contacts with the criminal-justice system. The state reasoned that a comprehensive list of a felon's criminal contacts might assist law enforcement personnel in identifying patterns of criminal activity and apprehending suspects.

The District Court issued a written decision on July 18, 2006, holding that " § 12–1–12 and 12–1–12.1, insofar as it denies to persons convicted of a felony the right to have their records of acquittal or exoneration expunged, violates the equal protection of the laws."[3] The court noted that

"(a) Any fingerprint, photograph, physical measurements, or other record of identification, heretofore or hereafter taken by or under the direction of the attorney general, the superintendent of state police, the member or members of the police department of any city or town or any other officer authorized by this chapter to take them, of a person under arrest, prior to the final conviction of the person for the offense then charged, shall be destroyed by all offices or departments having the custody or possession within sixty (60) days after there has been an acquittal, dismissal, no true bill, no information, or the person has been otherwise exonerated from the offense with which he or she is charged, and the clerk of court where the exoneration has taken place shall, consistent with § 12–1–12.1, place under seal all records of the person in the case including all records of the division of criminal identification established by § 12–1–4; provided, that the person shall not have been previously convicted of any felony offense."

2. Section 12–1–12.1 states in pertinent part:

"(a) Any person who is acquitted or otherwise exonerated of all counts in a criminal case, including, but not limited to, dismissal or filing of a no true bill or no information, may file a motion for the sealing of his or her court records in the case, provided, that no person who has been convicted of a felony shall have his or her court records sealed pursuant to this section.
" * * *
"(c) If the court, after the hearing at which all relevant testimony and information shall be considered, finds that the person is entitled to the sealing of the records, it shall order the sealing of the court records of the person in that case."

3. It is worth noting that § 12–1–12 provides for the destruction and sealing of certain records of identification taken by or under the direction of the Attorney General, the state police, or any municipal police department, and § 12–1–12.1 permits the sealing of court

the statutory scheme in §§ 12–1–12 and 12–1–12.1 establishes two classes of people-those acquitted or exonerated of a crime who have no felony conviction on their record, and those acquitted or exonerated who do have a prior felony conviction on their record. The court went on to say:

"The former category of persons is allowed to have their records of the acquittal or exoneration sealed and expunged while the latter category of persons is not allowed a similar remedy. The question posed by the defendant's motion is whether this legislative classification is permissible under the equal protection clause of the Fifth and Fourteenth Amendments to the United States Constitution."

The District Court employed a rational-basis analysis, reasoning that the legislative classification in §§ 12–1–12 and 12–1–12.1 did not impinge upon a fundamental right or a suspect class. Describing the rational-basis test as a "relaxed standard" that is "easily satisfied," the District Court nevertheless found no rational basis for distinguishing between felons and non-felons in §§ 12–1–12 and 12–1–12.1. The court described §§ 12–1–12 and 12–1–12.1 as remedial statutes with two purposes: first, to remove the social stigma of criminal charges for people who are acquitted or otherwise exonerated; and second, to remove economic disabilities such as employment disadvantages that arise from the mere filing of charges.

The District Court rejected the state's contention that the maintenance of all criminal records relating to a felon might help identify patterns of criminal activity and apprehend criminals. The court found the distinction between felons and non-felons to be wholly unrelated to the objectives of §§ 12–1–12 and 12–1–12.1. The court reasoned that the criminal justice system and law enforcement personnel should not accord any relevance to an arrest record or charge when it later is judicially determined to have been improperly brought or to be without evidentiary support. In the District Court's view, using such records would lead to confusion and mistakes. The court also questioned why a felon could not have his new police and court records destroyed or sealed under §§ 12–1–12 and 12–1–12.1, even though the previous felony might be unrelated to the new charge, when a person with many similar misdemeanor convictions could have each record destroyed or sealed notwithstanding the relevance of the misdemeanor convictions in establishing a pattern of criminal activity.

The District Court concluded that it could not envision any conceivable rational basis for the legislative classification. The

records. Both statutes apply only to persons who have been acquitted or otherwise exonerated of the offenses to which the records relate. The expungement statute, G.L. 1956 chapter 1.3 of title 12, on the other hand, applies to all court, police, and probation records of first offenders. In the case at bar, defendant is not a first offender, thus rendering expungement inapplicable. As a practical matter, however, placing records under seal and the expungement of records of a conviction are very similar remedies. *Compare* § 12–1.3–1(2) (expungement of court records "means the sealing and retention of all records of a conviction and/or probation and the removal from active files of all records and information relating to conviction and/or probation") *with* § 12–1–12.1(d) ("The clerk of the court shall * * * place under seal the court records in the case in which the acquittal, dismissal, no true bill, no information or other exoneration has been entered."). It is also important to note that the destruction of a record, in contrast to the expungement or placement under seal of a record, "eliminates all records of that information * * *. The information is not flagged, but is permanently erased from the case management system as if it never existed." Supreme Court Executive Order No. 2007–09.

court said that any person who has been wrongfully charged or later acquitted should not suffer a disability from the mere arrest or filing of charges. Stating that "[o]ur criminal justice system should demand no less," the District Court explained that the "legislative remedy * * * of expunging the records and removing the social stigma and other economic disabilities that arise in cases in which the person was acquitted or otherwise exonerated of the charges, should be equally available to all persons regardless of their prior convictions."

## II

### Standard of Review

 This Court's review "on writ of certiorari is limited 'to examining the record to determine if an error of law has been committed.'" *Crowe Countryside Realty Associates Co., LLC v. Novare Engineers, Inc.*, 891 A.2d 838, 840 (R.I.2006) (quoting *State v. Santiago*, 799 A.2d 285, 287 (R.I.2002)). "Questions of law * * * are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." *Hometown Properties, Inc. v. Rhode Island Department of Environmental Management*, 592 A.2d 841, 843 (R.I.1991) (quoting *Narragansett Wire Co. v. Norberg*, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977)). "We reverse only when we find pursuant to the petition that the lower-court judge committed an error of law." *Boucher v. McGovern*, 639 A.2d 1369, 1373 (R.I.1994) (citing *Wellington Hotel Associates v. Miner*, 543 A.2d 656, 660 (R.I.1988)).

 This Court uses the "greatest possible caution" when reviewing a constitutional challenge to a statute. *State v. Hall*, 940 A.2d 645, 657 (R.I.2008) (quoting *Cherenzia v. Lynch*, 847 A.2d 818, 822 (R.I.2004)). "In assessing [a] challenge to the constitutionality of [a statute], 'we begin with the principle that legislative enactments of the General Assembly are presumed to be valid and constitutional.'" *Newport Court Club Associates v. Town Council of Middletown*, 800 A.2d 405, 409 (R.I.2002) (quoting *Rhode Island Depositors Economic Protection Corp. v. Brown*, 659 A.2d 95, 100 (R.I.1995)). "To be deemed unconstitutional, a statute must 'palpably and unmistakably be characterized as an excess of legislative power.'" *Cherenzia*, 847 A.2d at 822 (quoting *City of Pawtucket v. Sundlun*, 662 A.2d 40, 44–45 (R.I.1995)). "Unless the party challenging the constitutionality of a statute can prove beyond a reasonable doubt that the act violates a specific provision of the [Rhode Island] [C]onstitution or the United States Constitution, this Court will not hold the act unconstitutional." *Cherenzia*, 847 A.2d at 822 (citing *Sundlun*, 662 A.2d at 44–45).

## III

### Discussion

#### A. Equal Protection

The issue before this Court is whether the distinction between felons and non-felons in §§ 12–1–12 and 12–1–12.1 violates the Equal Protection Clause. The Fourteenth Amendment to the United States Constitution provides that a state shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, sec. 1.[4]

---

**4.** Although the District Court framed the issue as "whether this legislative classification is permissible under the [E]qual [P]rotection [C]lause of the Fifth and Fourteenth Amendments to the United States Constitution," it clearly based its analysis upon the Fourteenth Amendment. We note that the Fifth Amendment's equal-protection guarantee applies to federal action, not state action, and therefore is inapplicable in this case.

The District Court concluded that the classification involved neither a fundamental right nor a suspect class of persons, a conclusion that neither defendant nor the state contest. When, as here, "neither a suspect class nor a fundamental right is implicated, then the legislation properly is analyzed under a minimal-scrutiny test." *Riley v. The Rhode Island Department of Environmental Management*, 941 A.2d 198, 206 (R.I.2008). A statute will survive this minimal scrutiny if "a rational relationship exists between the provisions of [the statute] and a legitimate state interest." *Id.* (quoting *Cherenzia*, 847 A.2d at 825).

To ascertain whether a rational relationship exists, the proper inquiry is not whether this Court can find a rational basis for the statute, but whether "the General Assembly rationally could conclude that the legislation would resolve a legitimate problem." *Mackie v. State*, 936 A.2d 588, 596 (R.I.2007). Under rational-basis review, if we "can conceive of any reasonable basis to justify the classification, we will uphold the statute as constitutional." *Id.* (quoting *Cherenzia*, 847 A.2d at 825). Therefore, even if the General Assembly had a constitutionally improper motive when it passed legislation, "the legislation would still hold up to rational basis scrutiny if this [C]ourt could find any legitimate objective." *Id.* (quoting *Power v. City of Providence*, 582 A.2d 895, 903 (R.I. 1990)). Thus, to overcome the presumption of validity, a party seeking to attack a statutory classification has the burden "to negate *every* conceivable basis which might support it." *Id.* at 597 (quoting *Medeiros v. Vincent*, 431 F.3d 25, 32 (1st Cir.2005)).

## B. Rational–Basis Analysis

Sections 12–1–12 and 12–1–12.1 draw a distinction between those persons acquitted or exonerated of a crime without a previous felony conviction on their record and those acquitted or exonerated with a previous felony conviction. The statutes allow the former to have certain records of identification destroyed and court records sealed, whereas convicted felons are denied similar relief.

As the District Court aptly noted, the rational-basis review is a "relaxed standard" that is "easily satisfied." Thus, we must find only that a rational reason exists for drawing the distinction between felons and non-felons or misdemeanants that would justify prohibiting felons from having such records sealed and destroyed.

Here, the state contends that the District Court erred in finding that no permissible basis exists to support the classification between felons and non-felons. We agree and conclude that defendant has failed "to negate *every* conceivable basis" that might justify the statutory classification. *Mackie*, 936 A.2d at 597 (quoting *Medeiros*, 431 F.3d at 32).

The state's interest in effective law enforcement represents one rational basis justifying the classification between felons and non-felons that defendant failed to negate. Considering the constitutionality of a Louisiana statute similar to the one at issue here,[5] the Supreme Court of Louisiana held that retaining records of felony arrests served a valid state interest. *State v. Expunged Record*, 881 So.2d 104, 105–06 (La.2004). The court reasoned that arrest records were "useful in uncovering criminal conduct, aid[ed] in setting bond, and facilitate[d] the work of correctional insti-

---

5. The Louisiana statute La.Rev.Stat. Ann. § 44:9(E)(1)(a) (2007) allows for destruction of misdemeanants' arrest records but prohib-

its the destruction of the arrest records for persons arrested for felony offenses.

tutions." *Id.* at 112 (quoting *State v. Nettles,* 375 So.2d 1339, 1342 (La.1979)).

The Supreme Court of Georgia also recently recognized law enforcement as a state interest sufficient to satisfy rational-basis review when it upheld a Georgia statute that subjected all convicted felons, but not convicted misdemeanants, to DNA profiling. *Quarterman v. State,* 282 Ga. 383, 651 S.E.2d 32, 34 (2007). The Court reasoned that the Legislature's interest in "creating for law enforcement purposes a permanent identification record of convicted felons" was justified "based on the difference between the types and seriousness of the offenses as well as the severity of punishment involved" and the fact that "convicted felons are more likely to violate the law than ordinary citizens." *Id.*

Turning to §§ 12–1–12 and 12–1–12.1, we determine that the General Assembly rationally could conclude that denying convicted felons the privilege of having certain police and court records relating to subsequent arrests sealed or destroyed serves the state's legitimate interest in law enforcement. As the Attorney General articulated in his brief to this Court, felons' arrest records, even acquittals and exonerations, may help in identifying patterns of criminal activity and the identification and apprehension of criminals. Additionally, this Court previously has found effective law enforcement an important state interest. *State v. Anil,* 417 A.2d 1367, 1370 (R.I.1980) (concluding that the state must be able to withhold the identity of confidential informants to protect the "public interest in effective law enforcement").

We are satisfied that maintaining records of felons' arrests aids the state's legitimate interest in law enforcement, and further, the statutory classification between felons and non-felons rationally relates to this interest. It is our opinion, therefore, that the classification does not violate the Equal Protection Clause.

## IV

### Conclusion

For the forgoing reasons we reverse the decision of the District Court and remand the papers to it.