**Supreme Court**

No. 2012-323-Appeal.
(WC 11-621)

Narragansett Indian Tribe          :

v.          :

State of Rhode Island          :
and UTGR, Inc. d/b/a Twin River and          :
Newport Grand, LLC,          :
Intervenor Defendant.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Narragansett Indian Tribe       :

v.       :

State of Rhode Island       :
and UTGR, Inc. d/b/a Twin River and       :
Newport Grand, LLC,       :
Intervenor Defendant.       :

Present:  Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The defendant, the State of Rhode Island (State),

appeals from the entry of partial summary judgment in the Superior Court for the plaintiff, the

Narragansett Indian Tribe (Tribe), finding that the plaintiff had standing to pursue a

constitutional challenge to the 2011 Casino Act, G.L. 1956 § 42-61.2-2.1, as enacted by P.L.

2011, ch. 151, art. 25, § 2.[1]  This case came before the Supreme Court for oral argument on

December 4, 2013, pursuant to an order directing the parties to appear and show cause why the

issues raised in this appeal should not be summarily decided.  After carefully considering the

written and oral submissions of the parties, we are satisfied that this appeal may be resolved

without further briefing or argument.  For the reasons set forth in this opinion, we affirm the

judgment of the Superior Court.

---

[1] The matter came before the Superior Court on cross-motions for summary judgment.  The Superior Court granted partial summary judgment for defendant finding that the 2011 Casino Act was facially constitutional.  The Tribe has appealed that decision on the merits to this Court, No. 2012-322-Appeal, but the Tribe's appeal is not before us in the instant decision.

# I

## Facts and Travel

The underlying facts of this case are undisputed. The plaintiff, Narragansett Indian Tribe, is a group of Native Americans indigenous to the land that is now the state of Rhode Island. In 1880, the General Assembly disestablished the Tribe, leaving it with only two acres of its reservation.

Over the course of the next century, the Tribe and the state engaged in a series of disputes wherein the Tribe attempted to regain the tribal lands that it had lost. At length, in 1978, the dispute was settled by means of a Joint Memorandum of Understanding (JMOU), codified at 25 U.S.C. §§ 1701 through 1716, which was signed by the Tribe, then-Rhode Island Governor J. Joseph Garrahy, the Charlestown Town Council, and certain landowners. The JMOU transferred 1,800 acres in Charlestown back to the Tribe in the form of a trust in exchange for the Tribe's agreement that the transferred acres would remain subject to the laws, regulations, and jurisdiction of the state, with the exception of hunting, fishing, and taxation. The Tribe, as the only federally recognized Native American tribe in the state, has been recognized as an independent sovereign entity to be accorded due dignity and respect. See Narragansett Indian Tribe v. State of Rhode Island, 449 F.3d 16, 31 (1st Cir. 2006).

In 1988, Congress passed the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701 through 2721, which made Class II gaming, as defined in the IGRA, subject to regulation by the National Indian Gaming Commission (Commission). The IGRA permitted federally recognized tribes to apply to the Commission for approval of gaming proposals. Accordingly, the Tribe attempted to establish a gaming facility pursuant to the IGRA, which was opposed by the state. A series of legal skirmishes between the Tribe and the state precipitated by the Tribe's desire to

open a gaming facility led to then-Senator John H. Chafee attaching an amendment to the Omnibus Consolidated Appropriations Act of 1996, which amended the JMOU to clarify that the Tribe's lands returned to it under the JMOU were not to be treated as Indian lands for the purposes of the IGRA.

This Court has twice been asked to issue advisory opinions concerning proposed legislation in the Tribe's ongoing efforts to establish gaming in Rhode Island and has found that the proposed legislation contained constitutional defects. See In re Advisory Opinion to the Governor (Casino I), 856 A.2d 320 (R.I. 2004) and In re Advisory Opinion to the House of Representatives (Casino II), 885 A.2d 698 (R.I. 2005). Following these attempts, in 2006, the Tribe also proposed an amendment to the Rhode Island Constitution in an attempt to establish gaming, which was defeated in a voter referendum.

Twin River[2] and Newport Grand are state-licensed gambling venues in the state of Rhode Island where video lottery terminal (VLT) machines are presently utilized. By statute, the Tribe is entitled to receive 0.17 percent of net terminal income from the authorized VLT machines at Twin River up to a maximum of $10,000,000 per year. Section 42-61.2-7(a)(5).

In June 2011 and April 2012, Governor Lincoln Chafee signed into law two pieces of legislation providing for the establishment of state-authorized table games at the gambling facilities located at Twin River and Newport Grand, respectively, subject to approval of voter referenda (the Casino Acts).[3] See P.L. 2011, ch. 151, art. 25, § 2 and P.L. 2012, ch. 24, § 1. On

---

[2] The Twin River facility is operated by UTGR, Inc. d/b/a Twin River (UTGR).
[3] In November 2012, the voters of Newport rejected the proposed expansion to Newport Grand, and as such, Newport Grand is no longer involved in this appeal.

September 28, 2011, plaintiff Tribe filed the instant complaint[4] seeking a declaration that the Casino Acts are unconstitutional in violation of article 6, section 15 of the Rhode Island Constitution, which provides that all lotteries[5] must be "operated by the state" and will "be subject to the prescription and regulation of the general assembly," and the non-delegation doctrine embodied in sections 1 and 2 of article 6 of the Rhode Island Constitution. On October 26, 2011, UTGR, Inc. d/b/a Twin River (UTGR) filed a motion to intervene as a defendant, which was granted on January 6, 2012.

The parties filed cross-motions for partial summary judgment, both of which came before the Washington County Superior Court for hearing on May 30, 2012. The hearing justice issued a written decision on June 29, 2012, which found that plaintiff did have standing but that plaintiff had failed to meet its burden of proving beyond a reasonable doubt that the Casino Acts violate a provision of the Rhode Island Constitution. Accordingly, the hearing justice granted defendants' motions for partial summary judgment on July 10, 2012.

The plaintiff timely filed a notice of appeal to this Court on the hearing justice's grant of defendants' motions on July 23, 2012. The state filed a notice of cross-appeal as to the hearing justice's determination that plaintiff had standing on September 13, 2012. This Court declined to

---

[4] The plaintiff filed an amended complaint on April 19, 2012 to include the 2012 Casino Act, G.L. 1956 § 42-61.2-2.2, as enacted by P.L. 2012, ch. 24, § 1, regarding the Newport Grand facility.

[5] This Court has defined a "lottery" as "a scheme or a plan having three essential elements: consideration, chance, and prize." In re Advisory Opinion to the Governor (Casino I), 856 A.2d 320, 327 (R.I. 2004) (quoting Roberts v. Communications Investment Club of Woonsocket, 431 A.2d 1206, 1211 (R.I. 1981)). We have adopted a "dominant factor" doctrine to determine whether the element of chance is present and clarified that, "[u]nder this doctrine, a scheme is a lottery 'when an element of chance dominates the distribution of prizes, even though such a distribution is affected to some degree by the exercise of skill or judgment.'" Id. at 328 (quoting Roberts, 431 A.2d at 1211).

consolidate the two appeals. Accordingly, only defendant's appeal on the issue of standing is before this Court for decision.

## II

## Standard of Review

It is well settled that our review of a hearing justice's grant of summary judgment is <u>de novo</u>. <u>Sisto v. American Condominium Association, Inc.</u>, 68 A.3d 603, 611 (R.I. 2013). "We apply the same standards and rules as did the motion justice." <u>Beauregard v. Gouin</u>, 66 A.3d 489, 493 (R.I. 2013). We view the evidence in the light most favorable to the nonmoving party. <u>See</u> <u>id.</u> "Summary judgment is appropriate when no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' and the motion justice finds that the moving party is entitled to prevail as a matter of law." <u>Swain v. Estate of Tyre ex rel. Reilly</u>, 57 A.3d 283, 288 (R.I. 2012) (quoting <u>Beacon Mutual Insurance Co. v. Spino Brothers, Inc.</u>, 11 A.3d 645, 648 (R.I. 2011)).

## III

## Discussion

The state argues on appeal that the hearing justice erred in determining that the Tribe had standing to challenge the constitutionality of the Casino Acts.[6] The state contends that the Tribe has not suffered an injury in fact that differs from that of the public at large. The state further insists that the hearing justice erred in finding that the public interest exception to the injury-in-fact requirement for standing applied.

Standing is a threshold inquiry into whether the party seeking relief is entitled to bring suit. <u>See</u> <u>Blackstone Valley Chamber of Commerce v. Public Utilities Commission</u>, 452 A.2d

---

[6] Significantly, intervenor-defendant, UTGR, does not contest the Tribe's standing in this case.

931, 932, 933 (R.I. 1982). When standing is challenged, "the focal point shifts to the claimant, not the claim, and a court must determine if the plaintiff 'whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable' * * *." McKenna v. Williams, 874 A.2d 217, 226 (R.I. 2005) (quoting Flast v. Cohen, 392 U.S. 83, 99-100 (1968)). As this Court has stated, "[t]he essence of the question of standing is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues upon which the court depends for an illumination of the questions presented." Blackstone Valley Chamber of Commerce, 452 A.2d at 933.

In determining whether a party has standing, a court begins with the pivotal question of whether the party alleges that the challenged action has caused him or her injury in fact. See Pontbriand v. Sundlun, 699 A.2d 856, 862 (R.I. 1997). This Court has required that the alleged injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized * * * and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). In Rhode Island, "generalized claims alleging purely public harm are an insufficient basis for sustaining a private lawsuit." Watson v. Fox, 44 A.3d 130, 136 (R.I. 2012). Moreover, this Court has repeatedly emphasized that "[t]he line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury." Pontbriand, 699 A.2d at 862 (quoting Matunuck Beach Hotel, Inc. v. Sheldon, 121 R.I. 386, 396, 399 A.2d 489, 494 (1979)). On rare occasions, however, this Court will overlook the standing requirement by invoking the so-called "substantial public interest" exception in order to decide the merits of a case of substantial public importance. See, e.g., Burns v. Sundlun, 617 A.2d 114, 116 (R.I. 1992) (invoking the public interest exception where

"[t]he plaintiff raise[d] a question of statutory interpretation of great importance to citizens in localities that could become home to gambling facilities seeking to simulcast and invite wagering on out-of-state events").

The state argues that the Tribe has not demonstrated that it has suffered an injury in fact distinguishable from any injury suffered by the public at large. We find the state's contention to be without merit. The Tribe bases its argument of an injury in fact on its statutory right to receive 0.17 percent of the net terminal income from the authorized VLT machines. The parties did not dispute at oral argument that, as a result of the proposed establishment of table games at Twin River, some 200 VLT machines have been removed. The state contends that it is by no means certain that the Tribe will, in fact, suffer any reduction in income from the removal of the machines. The state avers that the expected increase in traffic to the Twin River establishment due to the new table games will offset the reduction in the number of machines. We are not persuaded by the state's argument. On the contrary, we conclude that it is reasonable to expect that a consequence of there being 200 fewer VLT machines may well be a reduction in the net terminal income from the machines. Moreover, while it is true the injury in fact for standing may not be purely conjectural or hypothetical, we nevertheless have not required that plaintiffs be able to demonstrate with absolute certainty that they have already suffered an injury. See Haviland v. Simmons, 45 A.3d 1246, 1257 (R.I. 2012) (holding that the uncertainty of the plaintiff's contractual status with her employer was a "concrete and particularized interest" sufficient to give the plaintiff standing to sue). The reasonable likelihood that the Tribe will suffer a reduction in income from the removal of the VLT machines is sufficient to support a finding that the Tribe has suffered an injury in fact.

In so holding, we emphasize as well that the Tribe does not need to have alleged that its loss in income from the removal of the machines will be a substantial one. As we have previously stated, the requirement for standing is only that plaintiffs have suffered an injury, not that the injury be substantial. See Pontbriand, 699 A.2d at 862. We note, however, that the loss of some 200 VLT machines as individual sources of income is not a trivial one. While the lure of the table games at Twin River might cause some new patrons to also try their luck at the VLT machines, these new patrons will have significantly fewer machines at which they might play.

The Tribe urges this Court to find, as did the hearing justice, that the instant matter also involves a question of substantial public interest. We note that this Court has generally been reluctant to invoke the public interest exception, which is reserved for rare circumstances. See Watson, 44 A.3d at 138; In re Review of Proposed Town of New Shoreham Project, 19 A.3d 1226, 1229 (R.I. 2011) (mem.). Accordingly, because we hold that the Tribe has demonstrated an injury in fact, we need not, and do not, reach the question of whether this qualifies within the public interest exception to standing. In so doing, we exercise our prerogative of affirming the hearing justice's finding for a different reason. See Levine v. Bess Eaton Donut Flour Co., 705 A.2d 980, 984 (R.I. 1998) (holding that the Supreme Court can affirm a trial justice's decision for reasons other than those relied upon by the trial justice).

## IV

## Conclusion

For the foregoing reasons, we hold that the Tribe was entitled to bring its claims challenging the Casino Acts. Accordingly, the judgment of the Superior Court finding that the Tribe had standing is affirmed. The record in this case will be retained by this Court so that the

Tribe may proceed in its cross-appeal of the Superior Court's grant of partial summary judgment in favor of the defendants.


Justice Goldberg did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**     Narragansett Indian Tribe v. State of Rhode Island and UTGR, Inc. d/b/a Twin River and Newport Grand, LLC, Intervenor Defendant.

**CASE NO:**     No. 2012-323-Appeal.
(WC 11-621)

**COURT:**     Supreme Court

**DATE OPINION FILED:**     January 10, 2013

**JUSTICES:**     Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**     Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Melanie Wilk Thunberg

**ATTORNEYS ON APPEAL:**

For Plaintiff:  William P. Devereaux, Esq.

For Defendant:  Michael W. Field
                Department of Attorney General