**Supreme Court**

No. 2012-322-Appeal.

(WC 11-621)

Narragansett Indian Tribe    :

v.    :

State of Rhode Island and UTGR, Inc.    :
d/b/a Twin River and Newport Grand, LLC
(Intervenors).

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Narragansett Indian Tribe : 

v. :

State of Rhode Island and UTGR, Inc. :
d/b/a Twin River and Newport Grand, LLC
(Intervenors).

Present: Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** The plaintiff, the Narragansett Indian Tribe (Tribe), appeals from the entry of partial summary judgment in the Superior Court in favor of the defendant, the State of Rhode Island (state), and the intervenor defendant, UTGR, Inc. d/b/a Twin River (UTGR), finding that the 2011 Casino Act, G.L. 1956 chapter 61.2 of title 42 (Casino Act or the act) is not facially unconstitutional. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

Much of the background of the lengthy disputes between the state and the Tribe as it pertains to gambling in Rhode Island is succinctly summarized in our previous opinion in this case. See Narragansett Indian Tribe v. State, 81 A.3d 1106, 1107-09 (R.I. 2014) (Tribe I). Accordingly, here, we summarize only the pertinent facts necessary to the disposition of this appeal.

The present appeal concerns only the facial constitutionality of the Casino Act.[1] On September 28, 2011, the Tribe filed a complaint against the state seeking a declaration that the Casino Act is unconstitutional in violation of article 6, section 15 of the Rhode Island Constitution, which provides, in relevant part, that "[a]ll lotteries shall be prohibited in the state except lotteries operated by the state * * * and all shall be subject to the prescription and regulation of the general assembly." Additionally, the Tribe asserted that the Casino Act was unconstitutionally vague and in violation of the non-delegation doctrine embodied in sections 1 and 2 of article 6 of the Rhode Island Constitution. Subsequently, UTGR was permitted to intervene as a defendant.

A hearing before the Washington County Superior Court on the parties' cross-motions for partial summary judgment was held on May 30, 2012. The hearing justice later issued a written decision, which found that, although the Tribe had standing, it nonetheless had failed to meet its burden of proving beyond a reasonable doubt that the Casino Act is facially unconstitutional.

The Tribe timely appealed the decision on the merits, and the state timely cross-appealed the determination that the Tribe had standing. This Court declined to consolidate the two appeals, and directed the parties to first address the issue of standing. On January 10, 2014, we issued an opinion affirming the hearing justice's decision that the Tribe had standing. Tribe I, 81 A.3d at 1111. However, we relied on different reasons from those relied on by the hearing justice. Id. Rather than invoking the public interest exception to standing, we held that the Tribe had "demonstrated an injury in fact" sufficient to maintain standing. Id.

---

[1] The Tribe's as-applied challenge remains pending in the Superior Court. Additionally, the parties disagree whether subsequent legislation and materials produced by the state in connection with the Casino Act should be taken into account on this appeal. Also, on April 19, 2012, the Tribe filed an amended complaint concerning, inter alia, matters pertaining to the operation of video lottery terminal machines. Since these matters were not addressed by the hearing justice, we decline to consider them at this stage. In any event, these matters appear more appropriate for as-applied adjudication.

Having cleared the standing hurdle, we proceed to address the merits of the Tribe's challenge.

## II

## Standard of Review

It is well settled that "[t]his Court reviews a lower court's grant of a motion for summary judgment de novo, 'employing the same standards and rules used by the hearing justice.'" Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 258 (R.I. 2011) (quoting Planned Environments Management Corp. v. Robert, 966 A.2d 117, 121 (R.I. 2009)). "In addition, since we have before us a pure statutory issue," our review is de novo. Planned Environments Management Corp., 966 A.2d at 121.

One who challenges the constitutionality of a statute bears the burden of "prov[ing] beyond a reasonable doubt that the act violates a specific provision of the [Rhode Island] [C]onstitution * * *." Oden v. Schwartz, 71 A.3d 438, 456 (R.I. 2013) (quoting Mackie v. State, 936 A.2d 588, 595 (R.I. 2007)). Additionally, we note "that legislative enactments of the General Assembly are presumed to be valid and constitutional." State v. Faria, 947 A.2d 863, 867 (R.I. 2008) (quoting Newport Court Club Associates v. Town Council of Middletown, 800 A.2d 405, 409 (R.I. 2002)). "As such, we 'exercise[ ] the greatest possible caution' in reviewing a challenge to a statute's constitutionality." Oden, 71 A.3d at 456 (quoting Mackie, 936 A.2d at 595). "Indeed, '[t]his [C]ourt will attach every reasonable intendment in favor of * * * constitutionality in order to preserve the statute.'" State ex rel. City of Providence v. Auger, 44 A.3d 1218, 1226 (R.I. 2012) (quoting Gem Plumbing & Heating Co. v. Rossi, 867 A.2d 796, 808 (R.I. 2005)). Therefore, "[t]o be deemed unconstitutional, a statute must palpably and

unmistakably be characterized as an excess of legislative power." Faria, 947 A.2d at 867 (quoting Cherenzia v. Lynch, 847 A.2d 818, 822 (R.I. 2004)).

## III

### Discussion

The present appeal concerns only the Tribe's facial challenge to the constitutionality of the Casino Act under the Rhode Island Constitution. At the outset, we recognize that "[t]he doctrine surrounding the 'facial' and 'as applied' forms of judicial review is 'currently a subject of hot debate, both in the [United States] Supreme Court and among commentators.'" United States v. Jones, 689 F.3d 696, 704 (7th Cir. 2012) (quoting Richard H. Fallon, Jr., Fact and Fiction About Facial Challenges, 99 Calif. L. Rev. 915, 917 (2011). Nonetheless, the current consensus appears to be that "facial challenges are generally equated with claims of unconstitutionality in toto," Gillian E. Metzger, Facial and As-Applied Challenges Under the Roberts Court, 36 Fordham Urb. L.J. 773, 786 (2009), whereas, "[a]s-applied challenges are then treated as the residual, although ostensibly preferred and larger, category." Fallon, 99 Calif. L. Rev. at 923. As the name suggests, as-applied challenges evaluate the constitutionality of a statute "as applied to the particular facts at issue." Holder v. Humanitarian Law Project, 561 U.S. 1, 18 (2010).

The United States Supreme Court has fairly recently stated that a key distinction between facial and as-applied challenges essentially "goes to the breadth of the remedy employed by the Court." Citizens United v. Federal Election Commission, 558 U.S. 310, 331 (2010). In addition, it has been suggested that "the availability of facial challenges varies on a doctrine-by-doctrine basis and is a function of the applicable substantive tests of constitutional validity." Richard H. Fallon, Jr., As-Applied and Facial Challenges and Third-Party Standing, 113 Harv. L. Rev. 1321,

1324 (2000); accord Marc E. Isserles, Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement, 48 Am. U. L. Rev. 359, 378 (1998); see also United States v. Stevens, 559 U.S. 460, 472-73 (2010); Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 (2008); Sabri v. United States, 541 U.S. 600, 609-10 (2004).

At the current stage,[2] the Tribe's facial challenge is roughly analogous in form to what has been described as a "valid rule facial challenge," which "is a challenge to a statute based on a constitutional infirmity evident in the written words of the statute itself." Isserles, 48 Am. U. L. Rev. at 428. Accordingly, we shall assess, as written, the Casino Act's constitutionality against the infirmities alleged by the Tribe.

The Tribe argues that the Casino Act must be invalidated because it is unconstitutionally vague or because it otherwise violates the non-delegation doctrine enunciated in article 6, sections 1 and 2 of the Rhode Island Constitution. We note, however, that there is no allegation that the Casino Act infringes upon First Amendment or other fundamental rights.

**A**

**Vagueness**

To the extent that a sufficient basis for invalidating the Casino Act under the vagueness doctrine[3] has been articulated, at the current stage of these proceedings, we may succinctly dispose of this argument.

---

[2] While we understand the time sensitive exigency (i.e., adjudication prior to the ballot referenda) that led the Superior Court to separate the as-applied and facial analyses, we note that such bifurcation is not preferable for purposes of judicial review.

[3] "The void-for-vagueness doctrine emanates from the due process requirements that a law must be defined '[1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" State ex rel. City of Providence v. Auger, 44 A.3d 1218, 1233 (R.I. 2012) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)).

The United States Supreme Court has stated that "[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." Maynard v. Cartwright, 486 U.S. 356, 361 (1988); see Humanitarian Law Project, 561 U.S. at 18 ("We consider whether a statute is vague as applied to the particular facts at issue."); Chapman v. United States, 500 U.S. 453, 467 (1991) ("First Amendment freedoms are not infringed by [the statute], so the vagueness claim must be evaluated as the statute is applied to the facts of this case."). Accordingly, the Casino Act must be evaluated on an as-applied basis when that challenge is considered by the Superior Court.

## B

## Non-delegation

We begin with the recognition that "the delegation of legislative functions is not a per se unconstitutional action." Milardo v. Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 270-71 (R.I. 1981); see Davis v. Wood, 427 A.2d 332, 335 (R.I. 1981) ("As a practical matter, the [non-delegation] doctrine has not prohibited the delegation of legislative power."). Nonetheless, we are mindful that "merely calling a casino 'state operated' does not make it so for purposes of fulfilling the very explicit terms of our Constitution." In re Advisory Opinion to the House of Representatives (Casino II), 885 A.2d 698, 707 n.8 (R.I. 2005). However, we are also cognizant of our role in evaluating the constitutionality of legislation. In performing this task, "if two alternate interpretations are possible, we shall favor that which presents no potential constitutional difficulties." Mosby v. Devine, 851 A.2d 1031, 1045 (R.I. 2004) (quoting Pontbriand v. Sundlun, 699 A.2d 856, 866 (R.I. 1997)).

The Tribe emphasizes that the extensive regulatory power given to the state in the Casino Act is an indication that the act is unconstitutional. This assertion must be rejected. That

the Casino Act grants the state regulatory power does not necessarily take away from whatever grant of operational power the Casino Act also provides. Indeed, the Rhode Island Constitution recognizes that regulation and operation are not mutually exclusive. Article 6, section 15 excludes lotteries operated by the state from the general prohibition on lotteries and also provides that all lotteries, including those operated by the state, "shall be subject to the prescription and regulation of the general assembly."

Additionally, we note that among the extensive operational powers given to the state through the Casino Act is the power not only to "[d]etermine the number, type, placement and arrangement of casino gaming games, tables and sites," § 42-61.2-2.1(c)(1), but also the "power to terminate or suspend any casino gaming activities." Section 42-61.2-2.1(c)(5). The justices of this Court previously opined[4] that this power was "essential to the exercise of operational control." Casino II, 885 A.2d at 710 n.12. Accordingly, this clause's existence among the panoply of powers present in the Casino Act supports the determination that the law is constitutional.

Further, as the hearing justice correctly recognized, the Casino Act does not suffer from any of the previous constitutional infirmities that were identified in In re Advisory Opinion to the Governor (Casino), 856 A.2d 320 (R.I. 2004) (Casino I) or Casino II. In Casino I, 856 A.2d at

---

[4] We note that "in giving advisory opinions, the [justices] of the Supreme Court do not render a decision of the [C]ourt, but only express their opinions as individual [justices] * * * [and] that for this reason such opinions have no binding force * * *." Opinion to the Governor, 109 R.I. 289, 291, 284 A.2d 295, 296 (1971). Still, "although we realize that they are of limited precedential effect * * * [advisory opinions] may be persuasive although not binding upon future or even the present members of this Court." In re Advisory Opinion to the Governor (Rhode Island Ethics Commission—Separation of Powers), 732 A.2d 55, 73 (R.I. 1999). Nonetheless, it remains that advisory opinions are "not an exercise of judicial power" and therefore are "not binding" and "carr[y] no mandate." In re Advisory Opinion to the House of Representatives (Casino II), 885 A.2d 698, 701 (R.I. 2005) (quoting In re Advisory Opinion to the Governor (Casino), 856 A.2d 320, 323 (R.I. 2004) (Casino I)).

330, the proposed operator of the casino was clearly identified as an affiliate of Harrah's Entertainment, rather than the state. Here, in contrast, the Casino Act authorizes state-operated casino gambling.[5] In Casino II, 885 A.2d at 708, the justices of this Court opined that the proposed legislation was constitutionally deficient because, inter alia, it granted a private entity "largely unmitigated control over the table games at the proposed casino." Here, however, the Casino Act explicitly vests the state with the power and authority to "[d]etermine the number, type, placement and arrangement of casino gaming games, tables and sites," § 42-61.2-2.1(c)(1), as well as the "power to terminate or suspend any casino gaming activities." Section 42-61.2-2.1(c)(5).

The Casino Act directly references article 6, section 15 of the Rhode Island Constitution and explicitly provides that, pursuant to that clause, the state "shall have full operational control" and have the "authority to make all decisions about all aspects of the functioning of the business enterprise * * *." Section 42-61.2-2.1(c). That the Casino Act lists specific aspects[6] over which the state has authority does not limit the broad grant of power because it is clear that by employing the language "including, without limitation," the specific enumerations are not intended to be the exclusive aspects over which the state has control. Id.; see 2A Sutherland Statutory Construction § 47:26 at 451 (7th ed. Norman J. Singer 2014) ("Where a statute

---

[5] The ballot referendum approved by voters asked:

> "Shall an act be approved which would authorize the facility known as 'Twin River' in the town of Lincoln to add state-operated casino gaming, such as table games, to the types of gambling it offers?"

We find that there was no constitutional infirmity in that question.

[6] We are aware that the Casino Act contains certain language copied from our advisory opinions in Casino I and Casino II. As the hearing justice astutely recognized, however, the Tribe has not identified any particular constitutional deficiency with respect to the copied language. Components of the Casino Act may be derived in haec verba from Casino I and Casino II, yet nothing about that ipso facto renders the language constitutionally infirm.

contains a grant of power enumerating certain things which may be done and also a general grant of power which, standing alone, would include these things and more, the general grant may be given full effect if the context shows that the enumeration was not intended to be exclusive." quoting Springer v. Government of Philippine Islands, 277 U.S. 189, 206 (1928)). This is bolstered by the fact that the Casino Act contains a clause which provides that the state shall "[h]old all other powers necessary and proper to fully effectively execute and administer the provisions of" the Casino Act. Section 42-61.2-2.1(c)(10).

It is contended that the Casino Act "allows the State to potentially delegate disproportionate power to a private entity to operate what is supposed to be a State entity, in violation of the Rhode Island Constitution." However, "[i]n determining whether a law is facially invalid, we must be careful not to * * * speculate about 'hypothetical' or 'imaginary' cases." Washington State Grange, 552 U.S. at 449-50. Indeed, "[t]he fact that the * * * [Casino] Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it * * * [facially] invalid." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 634 (1989) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

The Tribe acknowledges that "[m]any questions concerning the operation of the * * * casino[ ] simply remain unanswered * * *." We must emphasize, however, that "[f]acial challenges are disfavored for several reasons," including that they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Washington State Grange, 552 U.S. at 450, 451. Accordingly, if the answers to those lingering questions are to be elucidated, it is through the as-applied challenge to the Casino Act that remains pending in the Superior Court.

Based on the strong presumption of constitutionality and the heavy burden in mounting a facial challenge, we cannot say that the Casino Act is facially unconstitutional.

**IV**

**Conclusion**

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record in this case shall be remanded to that court.

Justice Goldberg did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   Narragansett Indian Tribe v. State of Rhode Island and UTGR, Inc. d/b/a Twin River and Newport Grand, LLC (Intervenors).

**CASE NO:**   No. 2012-322-Appeal.
(WC 11-621)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   March 4, 2015

**JUSTICES:**   Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Melanie Wilk Thunberg

**ATTORNEYS ON APPEAL:**

For Plaintiff:  William P. Devereaux, Esq.

For Defendant:  Michael W. Field
Department of Attorney General

Mitchell R. Edwards, Esq.