Providence Place Group Limited,      :
      Partnership, et al.

            v.                        :

State of Rhode Island, acting by and   :
      through Division of Taxation.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.   Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258   or   Email   opinionanalyst@courts.ri.gov   of   any typographical or other formal errors in order that corrections may be made before the opinion is published.

Providence Place Group Limited,　:
　　Partnership, et al.

　　　　　　v.　　　　　　　:

State of Rhode Island, acting by and　:
　　through Division of Taxation.

Present: Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.** This case came before the Supreme

Court on November 3, 2021, pursuant to a writ of certiorari issued upon petition by

the defendant, the State of Rhode Island Department of Revenue, acting by and

through Division of Taxation (the state or defendant), seeking review of a District

Court judgment granting summary judgment in favor of the plaintiffs, Providence

Place Group Limited, Partnership (PPG) and Rouse Providence LLC (Rouse)

(collectively plaintiffs). The defendant asserts that the District Court erred in

granting summary judgment by (1) weighing conflicting evidence and deciding

issues of fact; (2) failing to address the issue of assignability or transferability of tax

exemptions; and (3) failing to construe and apply the tax-exemption provisions of

- 1 -

the Rhode Island Commerce Corporation Act, G.L. 1956 chapter 64 of title 42 (the CCA), so as to not violate the nondelegation doctrine of the Rhode Island Constitution. For the reasons set forth herein, we affirm the judgment of the District Court.

## Facts and Travel

In 1995 the General Assembly enacted G.L. 1956 chapter 63.5 of title 42 (the mall act), authorizing a public investment in the development of the Providence Place Mall and an associated parking garage (the mall). *See* P.L. 1995, ch. 400, § 1. The General Assembly found that the construction of the mall would "be a cornerstone in the continuing revitalization of a blighted portion of the urban core" of the City of Providence (the city) and would improve existing public investments made in the city. Section 42-63.5-2(16). The General Assembly further declared that the mall would "create significant job opportunities during construction and retail jobs thereafter[,]" thereby alleviating the "chronic unemployment and underemployment[,]" which the General Assembly found existed in the state and the city. Section 42-63.5-2(2).

Concomitant with these findings, the General Assembly recognized that the development of the mall involved "formidable challenges * * * and impose[d] * * * extraordinary construction expenses," § 42-63.5-2(19), such that "the developer [would] be required to expend substantial private funds[.]" Section 42-63.5-2(5). As

- 2 -

such, the General Assembly found that "a public investment to help defray those extraordinary expenses [was] required in order to induce the substantial private investment and the myriad public benefits[.]" Section 42-63.5-2(19). In December 1995, the state, acting through the Rhode Island Economic Development Corporation (EDC),[1] authorized PPG to develop and operate the mall.

In addition to creating the mall act, the General Assembly also amended certain provisions of the CCA, and extended EDC tax exemptions to the real or personal property of EDC projects where legal title to the property was held in the name of another entity. *See* § 42-64-20; *see also* P.L. 1995, ch. 400, § 4. Specifically, § 42-64-20(c) provides in part that:

> "[T]he [EDC] shall not be required to hold legal title to any real or personal property * * * but the legal title may be held in the name of a lessee (including sublessees) from the [EDC]. This property * * * *shall be exempt from taxation to the same extent as if legal title of the property were in the name of the* [*EDC.*]" (Emphasis added.)

Following the passage of these statutes, and pursuant to the mall act, PPG purchased a parcel of land in Providence for $11,100,000, and thereafter conveyed the land to the EDC for $1. On September 9, 1996, PPG and the EDC executed a ground lease for a term of ninety-nine years (the ground lease). The ground lease

---

[1] The EDC is now named the Rhode Island Commerce Corporation. *See* G.L. 1956 § 42-64-1.1. For clarity, we will refer to the Rhode Island Commerce Corporation as the EDC throughout this opinion.

provided for four successive options to extend its terms for ninety-nine years each, for a possible total of 495 years. The ground lease also granted legal title to the mall to PPG until the ground lease was terminated or expired. PPG was prohibited from assigning any of its rights in the ground lease without the EDC's consent until either final completion of the mall was achieved or July 1, 2001, whichever occurred later. Thereafter, PPG could assign its rights in the ground lease, provided two conditions were met: (1) The assignee assumed PPG's obligations, and (2) the transfer was to a qualified mall owner or operator.

In March 2004, PPG transferred its interest in the mall to Rouse. The state asserts that, prior to the scheduled transfer, the city inquired of the state as to whether the transfer would be subject to the conveyance tax.[2] In response, PPG, Rouse, defendant, and the city entered into a memorandum of agreement (MOA) whereby plaintiffs agreed to pay the conveyance tax to expediently transfer the mall, but reserved the right to resolve the tax issue after closing.

In June 2004 plaintiffs filed a request for refund and petition for declaratory ruling with defendant with respect to the conveyance tax paid pursuant to the MOA. Thereafter, the EDC obtained a written legal opinion confirming that the mall ceased being a "project" of the EDC upon final completion, as defined by the ground lease.

---

[2] The Rhode Island real estate conveyance tax imposes a tax of $2.30 for each $500 when an interest in real estate is conveyed to a purchaser for consideration that exceeds $100. *See* G.L. 1956 § 44-25-1(a).

According to defendant, because the mall was no longer an EDC project, the tax benefits afforded to it by § 42-64-20 had expired.[3] On May 22, 2006, the request for refund was denied by the chief revenue agent for the state for the same reasons given in the EDC's legal opinion. Subsequently, plaintiffs requested an administrative review and, on November 1, 2007, the state tax administrator issued a final decision and order denying the refund. The plaintiffs filed a timely administrative appeal with the Sixth Division District Court pursuant to G.L. 1956 § 8-8-24.

The plaintiffs filed a motion for summary judgment in District Court almost ten years later, on November 6, 2017. The delay was apparently due to a bankruptcy filing by Rouse's parent company. On May 14, 2019, the District Court issued a written decision and order granting plaintiffs' motion for summary judgment. The District Court judge found—based on legislation passed by the General Assembly, resolutions passed by the board of directors of the EDC with respect to the mall (the EDC resolutions), and the ground lease—that "the transfer of interest in the lease entered into by the EDC and PPG in September 1996 is not subject to the conveyance tax under § 44-25-1(a) because of a tax exemption granted through action by the

---

[3] Section 42-64-20(b) states that the EDC "shall not be required to pay state taxes of any kind, and the [EDC], *its projects*, property, and moneys * * * shall at all times be free from taxation of every kind by the state and by the municipalities and all political subdivisions of the state." (Emphasis added.)

Board of Directors of the EDC." Final judgment entered on July 24, 2019, in favor of plaintiffs in the amount of $2,029,000 plus interest. Thereafter, defendant filed a petition for a writ of certiorari with this Court for review of the final judgment, which we granted on September 16, 2020.

## Standard of Review

"This Court reviews the granting of summary judgment *de novo* and applies the same standards as the motion justice." *Belmore v. Petterutti*, 253 A.3d 864, 867 (R.I. 2021) (quoting *Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 274 (R.I. 2009)). "[W]e view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment." *Citizens Bank, N.A. v. Palermo*, 247 A.3d 131, 133 (R.I. 2021) (quoting *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 598 (R.I. 2019)). "Although summary judgment is recognized as an extreme remedy, to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that proves the existence of a disputed issue of material fact." *Lowney v. Canteen Realty, LLC*, 252 A.3d 259, 261-62 (R.I. 2021) (quoting *Ballard v. SVF Foundation*, 181 A.3d 27, 34 (R.I. 2018)).

**Discussion**

The defendant argues that the District Court judge erred by improperly weighing conflicting evidence; failing to address the issue of assignability or transferability of tax exemptions; and failing to construe and apply § 42-64-20(c) so as to not violate the nondelegation doctrine of the Rhode Island Constitution. We shall address these contentions *seriatim.*

**Tax-Exempt Status of the Mall**

The defendant contends that the trial judge erred when he weighed conflicting evidence and compared various provisions of the general laws, the ground lease, and the EDC resolutions. The defendant maintains that, based on the ground lease and the EDC resolutions, the EDC tax exemption expired when the mall ceased being an EDC project, which defendant argues occurred upon completion of construction and issuance of certificates of occupancy.

Despite the state's contentions, we conclude that, to determine the tax-exempt status of the mall, this Court need not look further than the plain and unambiguous language of the mall act. It is well-settled that in construing statutes "our ultimate goal is to give effect to the General Assembly's intent[.]" *Mutual Development Corporation v. Ward Fisher & Company, LLP*, 47 A.3d 319, 328 (R.I. 2012) (quoting *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 616 (R.I. 2011)). This Court has recognized that "[t]he best evidence of such intent can be found in the

plain language used in the statute." *Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I. 2003). Thus, if the language of a statute is clear and unambiguous, "this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. Diamante*, 83 A.3d 546, 548 (R.I. 2014) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)).

Here, the General Assembly's intent that the mall shall continue to exist as an EDC project post-construction is readily apparent from the nineteen findings and declarations the General Assembly made within the mall act. *See* § 42-63.5-2; *see also* P.L. 1995, ch. 400, § 1. The General Assembly anticipated that the mall would generate "myriad public benefits" during both construction *and* its subsequent operation. *See* § 42-63.5-2(19).

Specifically, during the mall's anticipated two-year construction phase, the General Assembly expected 1,200 full-time construction jobs to be created per year, § 42-63.5-2(8), and over $1.5 million in new income-tax revenue to be collected per year. Section 42-63.5-2(12). The General Assembly expected that, once the mall was operational, 2,800 permanent and part-time job opportunities would be created, § 42-63.5-2(10), and that the state would "realize in excess of five hundred thousand dollars * * * per year in new income tax revenues * * *." Section 42-63.5-2(13).

The General Assembly anticipated that the mall would continue operating as "a significant regional destination retail shopping center[,]" § 42-63.5-2(15), which would provide "new and unique retail shopping opportunities" that would both recapture retail purchases being made by Rhode Islanders out of state, § 42-63.5-2(14), and attract "substantial new purchase transactions" by persons from out of state. Section 42-63.5-2(15). This recapture and attraction of new purchasers was expected to "result in substantial net new sales tax revenue to the [s]tate." Section 42-63.5-2(14). The General Assembly also expected the mall parking garage "to assist the [s]tate in achieving its clean air quality goals[,]" § 42-63.5-2(6), and broadly recognized that the mall "will have enormous spin-off economic benefits[.]" Section 42-63.5-2(18).

Based on the clear and unambiguous language of the mall act, more than one phase of the project was contemplated and, once the mall became operational, it was still considered a project of the EDC. It is unnecessary for this Court to look any further than the mall act; we need not look to the ground lease, the EDC resolutions, or any other extraneous evidence. *See Angell v. Union Fire District of South Kingstown*, 935 A.2d 943, 947 (R.I. 2007) (determining that this Court will not look beyond a statute to clarify possible ambiguity where legislative intent can be discerned from the enactment). Therefore, contentions relative to the trial judge's weighing of conflicting evidence are of no moment. The mall act controls.

**Assignability or Transferability of Tax Exemptions**

The defendant next contends that the trial judge erred by refusing to address the issue of assignability or transferability of the EDC tax exemptions because, it contends, in the absence of express statutory authority, an EDC tax exemption is not assignable or transferable. We disagree.

It is undisputed that the EDC and its projects are tax-exempt. *See* § 42-64-20(b) ("The [EDC] shall not be required to pay state taxes of any kind, and the [EDC], its projects, property, and moneys * * * shall at all times be free from taxation of every kind by the state and by the municipalities and all political subdivisions of the state."). In order for the tax exemption to apply, the EDC is not required to hold legal title to the real or personal property, "but the legal title may be held in the name of a lessee (including sublessees) from the [EDC]." Section 42-64-20(c). Notwithstanding legal title being held in the name of an entity other than the EDC, the "property, which shall not include any goods or inventory used in the project after completion of construction, *shall be exempt from taxation to the same extent as if legal title of the property were in the name of the* [*EDC.*]" *Id.* (emphasis added).

Section 42-64-20(c) clearly and unambiguously attaches the tax exemption to a property, and not to the EDC or a specific lessee. The only exclusion to the tax exemption is specifically enumerated to include "any goods or inventory used in the

project after completion of construction[.]" Section 42-64-20(c). Otherwise, § 42-64-20(c) broadly exempts from taxation any real or personal property that qualifies as an EDC project. *See Gorman v. Gorman*, 883 A.2d 732, 738 n.9 (R.I. 2005) (recognizing that it is a reasonable inference that, where parties to a contract specifically enumerate items, those parties did not intend to include any other similar items not listed). Here, the tax exemption afforded to the EDC through § 42-64-20, including an exemption from the conveyance tax, is likewise afforded to the mall. The mall is an EDC project and, therefore, PPG was not subject to the conveyance tax when it transferred its interest in the ground lease to Rouse.

### Section 42-64-20(c) and the Nondelegation Doctrine

We now turn to defendant's final argument. The defendant contends that the District Court erred by interpreting § 42-64-20(c) as not violative of the nondelegation doctrine of the Rhode Island Constitution. Specifically, defendant claims that the duration of the tax exemption and the ability to transfer the exemption is an unconditional delegation of legislative power to a quasi-public corporation.

This Court has often recognized "that 'the delegation of legislative functions is not a per se unconstitutional action.'" *Narragansett Indian Tribe v. State*, 110 A.3d 1160, 1164 (R.I. 2015) (quoting *Milardo v. Coastal Resources Management Council of Rhode Island*, 434 A.2d 266, 270-71 (R.I. 1981)). The General Assembly may, without offending the constitution, delegate quasi-legislative power to other bodies,

provided that "the conditions of the delegation—the specificity of the functions delegated, the standards accompanying the delegation, and the safeguards against administrative abuse"—are sufficient. *Milardo*, 434 A.2d at 271.

Directing our attention to § 42-64-20(c), this Court has previously rejected any notion that the General Assembly's delegation to the EDC of its power to exempt property from taxation is too broad to pass legal muster. *See Warwick Mall Trust v. State*, 684 A.2d 252, 257 (R.I. 1996). Indeed, we have determined that "[t]he standards accompanying the delegation [of legislative power to the EDC] are * * * clear: the project in question must be an EDC project, and it must be in the interest of the EDC and the project that legal title be held by the lessee." *Id.* at 258. The General Assembly made a "decision that the EDC, as an administrative agent, can best decide whether to allow a tax exemption to be used for particular EDC projects in which property is held in the name of a lessee." *Id.* We found that "[t]his is exactly the kind of fact-specific, market-oriented, project-by-project determination in which such a legislative power may be delegated most expediently to an administrative agent[.]" *Id.* (discussing P.L. 1995, ch. 400).

Once again, we approve the General Assembly's delegation of powers to the EDC and conclude that § 42-64-20(c) does not violate the nondelegation doctrine of the Rhode Island Constitution because the standards accompanying the delegation are clear. As this Court has cogently expressed, "we have already twice approved

the General Assembly's delegation of powers to the EDC and its subsidiary entities as constitutionally permissible, [and] we need only repeat what we said before: 'We see no reason to reexamine this issue[.]'" *Warwick Mall Trust*, 684 A.2d at 258 (quoting *In re Advisory Opinion to the Governor (Rhode Island Airport Corporation)*, 627 A.2d 1246, 1252 (R.I. 1993)).

## Conclusion

Having carefully considered the arguments raised by the defendant, we deem them to be unpersuasive. We discern no material facts in dispute that were outcome-determinative, and the plaintiffs were entitled to judgment as a matter of law. For the reasons stated in this opinion, we affirm the judgment of the District Court. The record shall be returned to the District Court.

Chief Justice Suttell did not participate.



## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Providence Place Group Limited, Partnership, et al. v. State of Rhode Island, acting by and through Division of Taxation. |
| **Case Number** | No. 2019-298-M.P.<br>(A.A. 07-173) |
| **Date Opinion Filed** | January 25, 2022 |
| **Justices** | Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Sixth Division District Court |
| **Judicial Officer from Lower Court** | Associate Judge Walter Gorman |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Ryan M. Gainor, Esq.<br>Gerald J. Petros, Esq. |
| | For Defendant:<br><br>Matthew R. Cate, Esq.<br>Bethany M. Whitmarsh, Esq. |